**Affirmed in part and Reversed and Remanded in part and Opinion filed April 17, 2012.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-11-00439-CV

_____

**BOSSCORP, INC., FRED M. TRESCA, HBC INVESTMENTS LLC, WHITLEY PARTNERS, LTD., A. DUNCAN GRAY, M. RICHARD WARNER, NILS JOHANSSON, ALBERT R. DOWDEN, HENRY L. CHANG, PRINCE ZACHARIAH, MORGAN INTERESTS LLC, KEVIN O. KAMMERER, ROBERT M. ANDERSON, AND BOSS ENTERPRISES GROUP LLC, Appellants**

**V.**

**DONEGAL, INC., KESTREL CAPITAL L.P., CONTINENTAL ENERGY SERVICES LLC, BARRETT L. WEBSTER, PATRICK J. KELLY, AND STEPHEN M. SCHUSTER Appellees**

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-04459**

## OPINION

This is an appeal from a grant of a motion to stay arbitration. Appellants, members[1] of a Delaware limited liability company, initiated the arbitration proceeding

---

[1] Appellant BossCorp, Inc. formerly managed both companies but has never been a member of either.

against appellees—majority members of a subsidiary Delaware LLC—in relation to a dispute over the ownership and control of the two companies. In granting the stay requested by appellees, the trial court found that the dispute "includes no arbitrable issues." We hold that under Delaware law, which applies to the agreements in this case, the court properly exercised its jurisdiction to decide the scope of arbitrability of the issues, but erred in granting the stay of arbitration with regard to appellees Kestrel Capital L.P. ("Kestrel"), and Continental Energy Services LLC ("CES"). The trial court did not err in granting the motion to stay arbitration with regard to appellee Donegal, Inc. ("Donegal"). Accordingly, we affirm in part and reverse in part, with instructions that Kestrel and CES proceed to arbitration of this dispute with appellants.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2004, George Boss formed MBCorp LLC, a Delaware limited liability company, to participate in investments in energy infrastructure services companies. The next year, MBCorp formed CES as an MBCorp subsidiary for the same purpose. MBCorp was the sole member of, and held 100% of the ownership interest in, CES; MBCorp held no other assets. Appellant BossCorp Inc. ("BossCorp"), a Delaware corporation, managed both MBCorp and CES and received a management fee based on CES's revenues. All appellants other than BossCorp held ownership interests, either directly or through affiliates, in MBCorp.

In 2009, Boss, as Chief Executive Officer of CES, entered into an agreement ("the Restructuring Agreement") with Donegal and Kestrel to restructure and recapitalize CES.[2] Donegal and Kestrel had previously obligated themselves as guarantors of a $7 million Bridge Loan made to CES by Amegy Bank. Under the terms of the Restructuring Agreement, Donegal and Kestrel promised to convert these debt obligations into equity by

---

[2] Appellees refer to this agreement as a "nonbinding Letter of Intent." For ease of analysis, we adopt appellants' terminology in referring to a Restructuring Agreement. However, our opinion should not be construed as deciding the status of the agreement to the extent that is an issue in the underlying suit.

2

funding their portions of the Bridge Loan.[3]   In return for their promise to fund the loan, Donegal and Kestrel received Series A Preferred Membership Interests equivalent to 90% of the total equity ownership of CES.   Additionally, Donegal and Kestrel assumed business and operational control over CES and MBCorp through the replacement of the existing CES Board of Directors and MBCorp Board of Managers with Donegal and Kestrel's designated representatives—appellees Stephen M. Schuster, Patrick J. Kelly, and Barrett L. Webster.   BossCorp was removed as Manager of CES and MBCorp and replaced in that role by the new Board of Directors.   To effect these changes in control and equity ownership, MBCorp, in reliance on Donegal and Kestrel's promise to fund their guaranty obligations of the Bridge Loan, agreed to the Restructuring Agreement and relinquished 90% of its ownership of CES, and BossCorp ceded control to Donegal and Kestrel.

Later, Donegal and Kestrel reneged on their agreement to fund the Bridge Loan, and appellants formed a plan to restore their own control of, and ownership interests in, CES. In January 2011, appellants notified appellees of a meeting to take place two weeks later, during which the removal of CES's new managers would be considered.   On the eve of the meeting, Schuster represented to appellants that the Board had merged the two LLCs, effectively dissolving MBCorp into the surviving CES.   This merger purported to leave appellants with ownership interests in CES, but in proportionally smaller shares than they had held in MBCorp.

In response to the claimed merger and changes to their ownership positions, appellants[4] filed an action for injunctive and declaratory relief in the trial court. Appellants asserted claims against appellees for breach of contract, fraud in the

---

[3] Donegal was responsible for $4,000,000 of the loan and Kestrel was responsible for $2,000,000. The remaining $1,000,000 was to be converted to equity by investment from other existing members of MBCorp.

[4] BossCorp was not one of the original petitioners.   It was joined on February 14, 2011, one day before the other petitioners nonsuited and filed a Demand for Arbitration with the American Arbitration Association, leaving BossCorp and (briefly) Boss Enterprises as plaintiffs.

3

inducement, and fraud in a stock transaction based on their failure to fund the Bridge Loan and attempt to merge MBCorp into CES without appellants' approval. Regarding CES, appellants claimed a breach of the LLC's formation agreement in CES's failure to insist upon performance of the Restructuring Agreement by Donegal and Kestrel.

On January 24, 2011, the trial court granted a temporary restraining order prohibiting appellees from taking any further action to complete the merger or any further action that would affect the existence of MBCorp or CES or the ownership interests of any of the companies' members. After the order expired and appellants failed to pay the bond required to secure an extension, all appellants other than BossCorp[5] nonsuited their claims and, along with Boss, filed a Demand for Arbitration with the American Arbitration Association. Appellants invoked identical arbitration clauses in the two Delaware LLC agreements, which read as follows:

> Section 12.1 Arbitration
>
> Except for ancillary measures in aid of arbitration and for proceedings to obtain provisional remedies and interim relief, including injunctive relief, any controversy, dispute, claim arising out of, in connection with, or relating to this Agreement, or the breach, termination, or validity thereof or of any transaction completed hereby (any such controversy, dispute, or claim being referred to as a "Dispute") shall be finally settled by arbitration, conducted expeditiously in accordance with the Commercial Arbitration Rules then in force (the "AAA Rules") of the American Arbitration Association (the "AAA").

A week later, Donegal, Kestrel, and CES filed a third party petition against Boss[6] and the nonsuited plantiffs and counterclaims against BossCorp, requesting that the trial court stay the arbitration proceeding. After a hearing, the trial court granted appellees' request to stay the arbitration, and appellants challenge that decision on appeal.[7]

---

[5] Boss Enterprises initially failed to nonsuit, but it joined in the Demand for Arbitration and was later omitted in BossCorp's amended petition for tort damages.

[6] Although Boss was subject to the order staying arbitration, he did not join in this appeal.

[7] Schuster, Kelly, and Webster joined in appellees' amended petition three days after the

4

## II. ISSUES PRESENTED

In their first two issues, appellants argue that the trial court erred in deciding that there were no arbitrable issues and in granting appellees' request to stay arbitration of the parties' dispute concerning the CES and MBCorp LLC agreements. In their third issue, appellants contend that the trial court erred in failing to allow the arbitrator to decide the scope of the arbitration clauses in the first instance. Because resolving the latter issue would potentially render the first two questions moot, we first address whether the trial court had jurisdiction to decide the arbitrability of the agreement and only then consider whether the trial court correctly granted appellees' motion to stay arbitration.[8]

## III. GOVERNING LAW

The Federal Arbitration Act ("FAA") preempts state law that would otherwise render arbitration agreements unenforceable in a contract involving interstate commerce. 9 U.S.C. § 2 (West 2008); *Southland Corp. v. Keating*, 465 U.S. 1, 10–11, 104 S Ct. 852, 858, 79 L. Ed. 2d 1 (1984); *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 888 (Tex. 2010). The parties in this case do not dispute that the two Delaware LLC agreements involve interstate commerce.[9] Under the FAA, courts should apply ordinary state-law principles governing the formation of contracts when determining issues of substantive arbitrability. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115

---

trial court granted the Motion to Stay. Thus, they were not subject to that order, have not filed briefs on appeal, and no error is alleged with respect to them. Therefore, although they joined the other appellees in filing the Notice of Appeal in this case, they are not properly considered parties to this appeal. *See Showbiz Multimedia, LLC v. Mountain States Mortg. Ctrs., Inc.*, 303 S.W.3d 769, 771 n.3 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (appellee must be party to trial court's final judgment and someone against whom appellant raises issues or points of error in appellant's brief) (citing *Gray v. Allen*, 41 S.W.3d 330, 331 n.2 (Tex. App.—Fort Worth 2001, no pet.)).

[8] The second issue—whether the trial court correctly determined that there are no arbitrable issues—is subsidiary to the question of whether the trial court correctly granted the Motion to Stay on that basis.

[9] Appellees insist that the basis of appellants' claim is not the Delaware LLC agreements but the Restructuring Agreement, which contains no arbitration clause and should be subject to a normal contract law analysis. However, the issue on appeal is whether the trial court correctly stayed arbitration on the LLC agreements, so we must look to the FAA as the law governing that question.

S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995).  As noted, the two Delaware LLC agreements provide that they should be "construed and enforced in accordance with and governed by the laws of the State of Delaware."  The arbitration clauses contained in those agreements specify that any actual arbitration is to be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("the AAA Rules"), but the arbitration agreements themselves are expressly governed by Delaware law.

The Delaware Supreme Court has confirmed that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 78 (Del. 2006).  A Delaware LLC is bound by the arbitration provisions of its own governance and operation agreement, even where the LLC did not itself execute the agreement.  *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 287 (Del. 1999).  Delaware arbitration law mirrors federal policy in presuming the validity of arbitration agreements and resolving doubts about the scope of arbitrable issues in favor of arbitration.  *See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983) (explaining federal law and policy); *Willie Gary* 906 A.2d at 78 (explaining Delaware law).

The question of whether parties have agreed to arbitrate their disputes is to be decided by the court, unless there is clear and unmistakable evidence that the parties delegated that question to the arbitrator instead.  *First Options*, 514 U.S. at 944–45, 115 S. Ct. at 1924.  Federal law refers gateway matters such as (1) whether the parties are bound by a given arbitration clause and (2) whether a certain dispute is within the arbitration agreement to the court in order to "avoid the risk of forcing parties to arbitrate a matter they may well not have agreed to arbitrate."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84, 123 S. Ct. 588, 591–92, 154 L. Ed. 2d 491 (2002).

The Delaware Supreme Court has adopted the majority federal view that a reference to the AAA Rules in an arbitration agreement serves as the type of clear and unmistakable evidence that the parties agreed to submit the question of the arbitrability of a particular dispute to the arbitrator. *Willie Gary*, 906 A.2d at 80. However, the court limited this interpretation to arbitration clauses that broadly refer all disputes to arbitration under the referenced rules. *Id*. Where an arbitration agreement specifically reserves carve-outs for judicial remedies, something more than reference to the AAA Rules is needed to establish that the parties intended to arbitrate the arbitrability of their dispute. *Id*. at 81.

Whether the court or the arbitrator decides the question of substantive arbitrability, Delaware law strongly favors arbitration. *See Elf*, 727 A.2d at 295. An arbitration clause, though, only covers claims that touch on the legal rights contained in the underlying contract or agreement within which the clause is found. *See Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 159–60 (Del. 2002) (holding that a fiduciary duty claim was not covered by an arbitration provision in a stock underwriting agreement). Where an arbitration clause is broad in scope, courts will defer to it where a claim touches on any issues of contract rights or contract performance. *Id*. at 155.

## IV. STANDARD OF REVIEW

We review a trial court's grant of a motion to stay arbitration under an abuse-of-discretion standard. *See McReynolds v. Elston*, 222 S.W.3d 731, 739 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (so holding on appeal of order denying motion to compel arbitration under TAA); *see also Garcia v. Huerta*, 340 S.W.3d 864, 868–69 (Tex. App.—San Antonio 2011, pet. filed) (so holding on appeal of order denying motion to compel arbitration under FAA); *Sidley Austin Brown & Wood, LLP v. J.A. Green*, 327 S.W.3d 859, 863 (Tex. App.—Dallas 2010, no pet.) (same); *SEB, Inc. v. Campbell*, No. 03-10-00375-CV, 2011 WL 749292, at *2 (Tex. App.—Austin Mar, 2, 2011, no pet.) (mem. op.) (same). Under this standard, we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal

determinations *de novo*. *In re Labatt Food Service, L.P.*, 279 S.W.3d 640, 643 (Tex. 2009). Determining whether a claim falls within the scope of an arbitration agreement involves the trial court's legal interpretation of the agreement, and we review such interpretations *de novo*. *McReynolds*, 222 S.W.3d at 740.

## V. ANALYSIS

### A. Jurisdiction of the Trial Court to Rule on the Scope of Arbitration

Appellants contend that the trial court erred in not allowing the arbitrator to determine the scope of the arbitration clauses in the first instance. The arbitration clause at issue here, reproduced above, expressly incorporates the rules of the American Arbitration Association (the "AAA") which state that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Appellants argue that this reference to the AAA Rules constitutes a clear and unmistakable intent to delegate the question of arbitrability to the arbitrator, as Delaware law requires under *Willie Gary*[10] and other cases.

However, the arbitration agreements in this case refer disputes to arbitration under the AAA Rules with a significant exception for "ancillary measures in aid of arbitration and for proceedings to obtain provisional remedies and interim relief, including injunctive relief." Appellants contend that this exception does not defeat the parties' purported intent to refer arbitrability to the arbitrator, relying on several cases in the Delaware Court of Chancery after *Willie Gary*. *See McLaughlin v. McCann*, 942 A.2d 616, 626 (Del. Ch. 2008) (holding that a narrow exception for judicial recourse in an arbitration clause that otherwise referred disputes to arbitration under the AAA Rules is not always enough to overcome the heavy presumption that the parties agreed to let the arbitrator decide arbitrability); *Julian v. Julian*, No. 4137-VCP, 2009 WL 2937121, at *7 (Del. Ch. Sept. 9, 2009) (mem op.) (holding that, when there is a broad arbitration clause and reference to the

---

[10] 906 A.2d at 80.

8

AAA Rules, a "colorable basis" for arbitration is enough to send the question of substantive arbitrability to the arbitrator).   We disagree that those cases control.

Where an arbitration agreement contains carve-outs and exceptions providing judicial remedies for disputes, something more than mere reference to the AAA Rules for the conduct of the arbitration is needed to show that the parties clearly and unmistakably intended to delegate arbitrability to the arbitrator instead of the court.   *Willie Gary*, 906 A.2d at 80–81.   In this case, not only are there exceptions to the arbitration clause in the relevant LLC agreements, but the parties' dispute over arbitrability specifically falls within those carve-outs.   The third-party petition by appellees that forms the basis of this interlocutory appeal requested two forms of relief: (1) "An order staying arbitration proceedings initiated by third-party defendants concerning the above-described dispute," and (2) "A Declaration that the above-described dispute between the parties includes no arbitrable issue and prohibiting third-party defendants . . . from proceeding with their efforts to have any of the above-described disputes between the parties submitted to arbitration."   The petition thus sought provisional, interim judicial remedies to enjoin appellants from proceeding in arbitration.   This type of action is reserved for the court by the express language of the arbitration agreements.

The Court of Chancery cases cited by appellants are distinguishable.   The clause here is far broader in referring disputes to arbitration than the clause in *McLaughlin* discussed above.   *Julian* is equally dissimilar to the present case, as we need not consider the "colorable basis" for arbitration when the clause we are dealing with is not sufficiently broad to send *all* disputes to arbitration on its face.   The carve-out in the arbitration clause here is substantial, and furthermore the action in the trial court is precisely the kind of judicial remedy explicitly reserved for determination in the court.

Accordingly, we disagree that the trial court erred in not allowing the arbitrator to determine the scope of arbitration in the first instance.   We overrule appellants' third issue.

9

**B.      Grant of the Stay of Arbitration**

In their first two issues, appellants argue that the trial court erred in determining that the underlying dispute raised no arbitrable issues and in granting the stay requested by appellees.   Appellants contend that the Restructuring Agreement does not disaffirm the arbitration clauses in the LLC agreements, that appellants have standing to invoke arbitration under those LLC agreements, and that appellees are bound to arbitrate by contract or estopped from avoiding arbitration.   We agree in part and hold that the claims against Kestrel and CES are arbitrable while those against Donegal are not.

Appellants are correct to point out that nothing in the Restructuring Agreement negates the arbitration clauses in the LLC agreements, or even addresses the issue of dispute resolution at all.   Further, the claims made by appellants in Plaintiffs' First Amended Original Petition are based on both the purported merger of MBCorp into CES and the failure of Donegal and Kestrel to perform their obligations under the Restructuring Agreement.   The merger claims plainly relate to the CES LLC agreement, which contains the arbitration clause.   The demand for rescission of the Restructuring Agreement would change the ownership of shares by the parties under the CES LLC agreement, and so this claim falls within the broad scope of the arbitration clauses as well.   *See Parfi*, 817 A.2d 149 at 154 (claims that touch on the legal rights covered by the underlying agreement are covered by the agreement's arbitration provision).

Appellees argue in response that arbitration is required only if the plaintiffs' claims *primarily arise* under the agreement containing the arbitration clause.   Appellees argue that the claims here primarily arise under the Restructuring Agreement, which contains no arbitration clause.   They base this argument on the Delaware Court of Chancery case *Towerhill Wealth Management, LLC v. Bander Family Partnership, LP*, No. 3830-VCS, 2008 WL 4615865, at *3 (Del. Ch. Oct. 9, 2009).   However, the facts of this case are distinguishable from those of *Towerhill*, as that case involved different agreements with conflicting dispute resolution provisions.   *Id*.   The choice between conflicting provisions

10

that faced the court in *Towerhill* is one that the trial court here did not have to make, and so determining which agreement the dispute "arises primarily from" is not necessary here. *See id*. (implementing the arbitration clause of the agreement which the dispute arises primarily from in the face of various dispute resolution clauses in different contracts). We hold that *Parfi* and not *Towerhill* controls in this case.

Appellees also contend that arbitration is not proper here because no single arbitration agreement reflects the assent of all parties to this litigation. Appellees note that only the CES and MBCorp LLC agreements, and not the Restructuring Agreement, contain clauses referring disputes to arbitration. Donegal argues that it has never been a member of either MBCorp or CES and therefore is not a signatory to any agreement containing an arbitration clause. We agree with Donegal's contention. As Donegal was never a member of either LLC and was not a party to the LLC agreements, Donegal was not a party to any agreement to arbitrate disputes relating to those agreements.[11] The trial court, therefore, correctly granted the stay with regard to Donegal.

Appellants nonetheless argue that Donegal should be estopped from avoiding arbitration because they allege concerted wrongdoing by Donegal and other defendants in the underlying case. Appellants cite *Douzinas v. American Bureau of Shipping, Inc.*, 888 A.2d 1146, 1153 (Del. Ch. 2006), for the principle that such estoppel is often warranted "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." However, appellants fail to explain that the Court of Chancery in *Douzinas* used this language to support the effort of a non-signatory to compel signatories to arbitrate disputes under an estoppel theory. *Id.* The situation in the present case is precisely the opposite, where appellants have tried to compel Donegal, a

---

[11] Appellants cite some evidence that Donegal was in fact an MBCorp member–it was referred to as one in the Restructuring Agreeement, and Schuster was affiliated with both MBCorp and Donegal—but the evidence is tenuous and mixed. As this is a question of fact, we defer to the trial court's determination.

11

non-signatory to the arbitration agreements, to arbitrate. *Douzinas* does not support this result, and we are convinced that Delaware law does not require Donegal to submit disputes to arbitration when it has not agreed to do so. *See Kuroda v. SPJS Holdings, L.L.C.*, No. 4030-CC, 2010 WL 4880659, at *7 (Del. Ch. Nov. 30, 2010) (mem. op.) ("[T]his not a case compelling a signatory to arbitrate with a nonsignatory—this is an issue of whether nonsignatories can be compelled to arbitrate under an equitable estoppel theory where no parties to the litigation are parties to the Consulting Agreement. I am aware of no case where this Court has required arbitration in similar circumstances.").

The trial court erred, however, in granting appellee's motion to stay the arbitration as to Kestrel. Kestrel was not originally, but is now, a member of CES, and part of appellants' suit in the underlying cause of action seeks rescission of the Restructuring Agreement that made Kestrel a member of CES.[12] Rescission would thus affect membership and ownership interests in CES, a remedy which is inherently linked to the rights, duties, and obligations in the LLC agreement. As the dispute between appellants and Kestrel touches on the LLC agreement, which contains the arbitration clause, appellants can invoke the requirement to arbitrate this issue. *See Parfi*, 817 A.2d at 155.

The trial court similarly erred with respect to CES. Appellants brought the underlying suit against CES to enforce CES's duty to insist upon performance of the Restructuring Agreement by Donegal and Kestrel. This cause of action was only available to appellants, as members of CES, by virtue of the CES LLC agreement. Thus, the cause of action against CES depends for its existence upon the CES LLC agreement, which contains the arbitration agreement clause. *See Parfi*, 817 A.2d at 155 (explaining that if a claim depends for its existence upon the agreement containing the arbitration clause, the claim is subject to arbitration). Under *Elf*, a Delaware LLC is bound by the

---

[12] Although Donegal was also a party to the Restructuring Agreement, it was not made a member of CES.

12

arbitration provisions of its own founding agreement. *Elf*, 727 A.2d at 287, 293. For these reasons, appellants can require CES to arbitrate this dispute.

Accordingly, the trial court erred in determining that this dispute raised no arbitrable issues. The merger claims and claims for rescission of the Restructuring Agreement relate to the LLC agreements, which contain a clause referring disputes to arbitration. The trial court erred in granting the stay of arbitration regarding Kestrel and CES. Because Donegal was neither a member of either LLC nor a signatory to any other arbitration agreement, the trial court did not err in granting the stay of arbitration as to Donegal.

## VI. CONCLUSION

The decision of the trial court is affirmed in part and reversed in part. The trial court did not err in deciding the scope of arbitration in the first instance. We affirm the grant of the motion to stay arbitration with respect to appellee Donegal. We reverse the grant of the motion to stay arbitration with regard to appellees Kestrel and CES, with instructions that Kestrel and CES proceed to arbitration.

/s/    Tracy Christopher
Justice

Panel consists of Chief Justice Hedges and Justices Christopher and McCally.

13