TRAFIGURA PTE. LTD., Appellant

v.

CNA METALS LIMITED, Appellee

NO. 14-16-00530-CV

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed June 27, 2017

---

Kenneth E. Broughton, Arturo Munoz, Francisco Rivero, Houston, TX, for Appellant.

Ashish Mahendru, Darren Braun, Houston, TX, for Appellee.

Panel consists of Justices Boyce, Busby, and Wise.

## OPINION

William J. Boyce, Justice

The principal issue on appeal is whether the trial court or an arbitrator determines arbitrability of the plaintiff's claims. The challenged order was signed by the trial court, which determined that the claims at issue are not arbitrable. Because an arbitration agreement existed between the parties, and because that agreement assigns arbitrability determinations to the arbitrator, we conclude the trial court erred by making the determination. Accordingly, we reverse and remand to the trial court for proceedings consistent with this opinion.

### BACKGROUND

Appellant Trafigura Pte. Ltd. contracted in January 2013 to buy 70,000 metric tons of iron ore from appellee CNA Metals Limited (the "First Contract"). This contract included a broad-form arbitration agreement submitting all disputes to arbitration in England under the United Kingdom's arbitration rules.

According to CNA, a smaller scrap-metal trading company called Jace Metals and Minerals, L.L.C. acted as CNA's agent in connection with the First Contract. CNA allegedly advanced funds to Jace with the expectation that Jace would use them to purchase the iron ore promised to Trafigura in the First Contract.

Because of Jace's alleged failure to secure sufficient iron ore, CNA delivered only 40,989.13 of the 70,000 contracted-for metric tons of iron ore. CNA admitted in its live petition below that it breached the First Contract by delivering only a portion of the contracted-for ore, but contended that Trafigura accepted the lesser amount in late March 2013 and paid CNA $4,302,211.60 for the ore in April 2013.

CNA alleged that, unknown to it, Jace still possessed a substantial amount of iron ore' purchased with CNA funds.

Jace allegedly approached Trafigura in June 2013 without CNA's knowledge and proposed to sell Trafigura 80,000 additional tons of iron ore. Jace and Trafigura allegedly entered into a new contract (the "Second Contract"), and Jace allegedly sold Trafigura the iron ore in exchange for approximately $4 million. Jace is alleged to have kept this amount for itself. CNA alleged that at least a portion of the iron ore Jace sold to Trafigura under the Second Contract was purchased using funds CNA had advanced to Jace to purchase ore under the First Contract.

CNA sued Jace and its principals in November 2013, and added Trafigura as a defendant in November 2015.[1] CNA alleged that Trafigura engaged in conversion of CNA's iron ore and engaged in a conspiracy with Jace "to fraudulent[ly] purchase, from Jace, iron ore it knew belonged to CNA."

Trafigura moved to stay proceedings and compel arbitration pursuant to the arbitration clause in the First Contract. After hearing arguments from the parties, the trial court denied Trafigura's motion to compel arbitration on June 16, 2016. The trial court made the following findings in its order:

1. On January 22nd, 2013 Plaintiff CNA entered into a purchase contract (hereinafter referred to as the "contract") with Defendant Trafigura PTE that contained a broad form arbitration agreement.

2. That while the relationship between the parties may have begun in this contract, or bear some evidentiary relationship to this contract, that the subject matter of the causes of action do not fall within the scope of the arbitration agreement, and can be maintained without reliance/reference to the contract.

Trafigura timely filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (Vernon 2015) (in a matter subject to the Federal Arbitration Act, an appeal may be taken from an interlocutory order of a district court under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. § 16); 9 U.S.C.A. § 16(a)(1)(C) (West 2009) (under FAA, appeal may be taken from order denying application to compel arbitration); *In re Helix Energy Sols. Grp., Inc.*, 303 S.W.3d 386, 396 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) ("The FAA governs a written arbitration clause in any contract involving commerce or evidencing a maritime transaction.").[2]

### ANALYSIS

Trafigura contends that the trial court erred by denying its motion to compel arbitration for three reasons. First, Trafigura contends that the trial court erred at the outset by determining arbitrability because the arbitration clause in the First Contract between CNA and Trafigura expressly reserved this determination for the arbitrator to make. Second, Trafigura contends that the trial court erred when it concluded that CNA's claims arose independently of the First Contract and therefore fell outside the scope of the First Contract's arbitration clause. Third, Trafigura contends that, even if CNA's claims fell outside the scope of the First Contract's arbitration agreement, CNA never-

---

1. CNA obtained a default judgment against Jace on May 25, 2015, for approximately $3.2 million.

2. According to the First Contract and CNA's pleadings, the iron ore was loaded onto a vessel in Mexico and offloaded in China.

theless sought to obtain the benefits of the Second Contract between Trafigura and Jace, and should therefore have been bound by the arbitration clause in that contract—which was identical to the arbitration clause in the First Contract—under the theory of direct benefits estoppel.

Because our resolution of Trafigura's first reason is dispositive, we do not reach Trafigura's remaining issues.

## I. Standard of Review

■ It is undisputed that the First Contract between CNA and Trafigura contained an arbitration agreement. At issue is whether the trial court was the proper authority to make the determination regarding whether CNA's claims in this suit fall within the scope of. that arbitration agreement. This determination depends on an interpretation of the parties' contracts, which we review *de novo. Schlumberger Tech. Corp. v. Baker Hughes Inc.*, 355 S.W.3d 791, 803 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

## II. Determining the Arbitrability of CNA's Claims

Trafigura contends in its first issue that the trial court erred at the outset by determining the arbitrability of CNA's claims—whether the claims fell within the scope of the arbitration agreement in the First Contract. Trafigura maintains that the arbitration clause in the First Contract expressly reserved the determination of arbitrability of any claims to the arbitrator.

■ The question of arbitrability addresses which claims must be arbitrated. *Southwinds Express Constr., LLC v. D.H. Griffin of Tex., Inc.*, 513 S.W.3d 66, 71 (Tex. App.—Houston [14th Dist.] 2016, no pet.). A party attempting to compel arbitration first must establish that a valid arbitration agreement exists and that the claims asserted fall within the agreement's

scope. *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 605 (Tex. 2005) (orig. proceeding) (per curiam); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *see also Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 229 (Tex. App.—Dallas 2010, pet. denied) (questions of arbitrability include "whether the parties agreed to arbitrate and whether a claim or dispute. is encompassed in the agreement to arbitrate").

■ Assuming a valid arbitration agreement exists, that agreement affects whether the trial court or the arbitrator has primary authority to determine arbitrability. *See Seven Hills. Commercial, LLC v. Mirabal Custom Homes, Inc.*, 442 S.W.3d 706, 715 (Tex. App.—Dallas 2014, pet. denied). Unless the parties clearly and unmistakably agree to submit threshold questions of arbitrability to the arbitrator, these issues are to be resolved by courts. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005). Because the substantive principles applicable to the. analysis in this appeal are the same under both the Federal Arbitration Act and the Texas Arbitration Act, we rely on cases discussing both statutes. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 n.10 (Tex. 2008); *Branch Law Firm L.L.P. v. Osborn*, No. 14-14-00892-CV, —— S.W.3d ——, —— n.3, 2016 WL 444867, at *3 n.3 (Tex. App.—Houston [14th Dist.] Feb. 4, 2016, pet. denied).

The parties dispute whether the First Contract's arbitration agreement encompasses CNA's claims against Trafigura. We first must determine whether this decision as to scope was the trial court's to make, or if instead the parties agreed to

have the arbitrator decide questions of arbitrability.

The arbitration agreement in the First Contract specified, in relevant part, that all claims, disputes or differences whatsoever between the parties arising out of or in connection with this contract, including without limitation to any question regarding its existence, validity or termination, (a **"Dispute"**) shall be referred to arbitration in London, England, in accordance with the Arbitration Act 1996 (or any subsequent amendment or re-enactment thereof) (the **"Act"**).

Several of our sister courts have held that similar language evidenced a clear intent to submit arbitrability questions to the arbitrator. *See Emp. Sols. McKinney, LLC v. Wilkerson*, No. 05-16-00283-CV, 2017 WL 1908626, at *5 (Tex. App.—Dallas May 10, 2017, no pet. h.) (mem. op.) ("Under the express terms of the [Employee Solutions Arbitration Policy & Procedures], 'any and all claims challenging the existence, validity or enforceability' of the policy were to be submitted to arbitration: This provision is clear and unmistakable evidence of the parties' intent to delegate issues of arbitrability to the arbitrator."); *T.W. Odom Mgmt. Servs., Ltd. v. Williford*, No. 09-16-00095-CV, 2016 WL 4487883, at *4-5 (Tex. App.—Beaumont Aug. 25, 2016, no pet.) (mem. op.) ("The 2013 agreement clearly and unmistakably shows that T.W. Odom and Williford intended to delegate gateway issues relating to the interpretation, applicability, or enforceability of the agreement to the arbitrator. . . . We conclude that the trial court erred by failing to allow the arbitrator to decide the parties' dispute concerning whether Williford's negligence claims fall within the scope of the 2013 agreement.").

Here, the First Contract requires arbitration of "all claims, disputes or differences" between CNA and Trafigura that arise "out of or in connection with" that contract. The First Contract further states that "any question regarding [the contract's] existence, validity or termination . . . shall be referred to arbitration."

One of CNA's principal contentions is that the First Contract "was fully performed and is now over and done with;" therefore, it appears CNA is arguing (at least in part) that the First Contract has terminated. Because questions concerning the First Contract's termination are explicitly identified as arbitrable matters, we are persuaded that the First Contract's broad arbitration clause delegates this gateway issue to the arbitrator for determination.

The First Contract's express incorporation of the United Kingdom's Arbitration Act of 1996 further demonstrates the parties' intent to place responsibility for arbitrability determinations with the arbitrator.

A number of our sister courts have adopted a general rule that when a broad arbitration agreement exists between the parties, and when that agreement incorporates arbitration rules that specifically empower the arbitrator to decide issues of arbitrability, then the incorporation of those rules constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability to the arbitrator. *See Gilbert v. Rain & Hail Ins.*, No. 02-16-00277-CV, 2017 WL 710702, at *4 (Tex. App.—Fort Worth Feb. 23, 2017, pet. filed) (mem. op.) (concluding arbitrator properly determined arbitrability because policy incorporated American Arbitration Association's commercial arbitration rules); *Jody James Farms, JV v. The Altman Grp., Inc.*, 506 S.W.3d 595, 599-600 (Tex. App.—Amarillo 2016, pet. filed) (applying rule to federal crop insurance policy and determining that incorporation of AAA rules "constitute[d] clear and unmistakable

evidence the parties to the policy intended the arbitrator to decide whether JJF's agreement to arbitrate is binding on it as against its effort to litigate its claims against Altman and Diaz in court"); *Schlumberger*, 355 S.W.3d at 803 ("There are no provisions in the Resolution or Procedure Agreements that negate the arbitrators' power under AAA Rule 7(a) to determine the arbitrability of a defense raised in arbitration. Thus, we conclude that this issue of contract interpretation was a question for the AAA panel, not the trial court and not this court."); *Saxa*, 312 S.W.3d at 229-31 (broad arbitration clause that explicitly incorporated AAA rules served as clear and unmistakable evidence of parties' intent to delegate question of arbitrability to arbitrator); *Rio Grande Xarin II, Ltd. v. Wolverine Robstown, L.P.*, Nos. 13-10-00115-CV & 13-10-00116-CV, 2010 WL 2697145, at *8-9 (Tex. App.—Corpus Christi July 6, 2010, pet. dism'd) (mem. op.) (arbitration clause in earnest money contract stating that arbitration would be conducted "in accordance with the Commercial Arbitration Rules of the American Arbitration Association" clearly and unmistakably showed intent that arbitrator determine arbitrability).

The Fifth Circuit and other federal appellate courts have reached the same conclusion. *See Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (stating "We agree with most of our sister circuits that the express adoption of [the AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability," and collecting cases); *see also Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262-63 (5th Cir. 2014) (concluding "that whether the Plaintiffs' claims are subject to arbitration must be decided in the first instance by the arbitrator, not a court," when the arbitration agreement expressly incorporates the AAA rules).

Although the First Contract did not incorporate the AAA rules, it did incorporate the United Kingdom's Arbitration Act 1996. Chapter 30 of the Arbitration Act 1996, titled "Competence of tribunal to rule on its own jurisdiction," empowers the arbitrator to decide questions of arbitrability:

(1) Unless otherwise agreed by the parties, the arbitral tribunal may rule on its own substantive jurisdiction, that is, as to—

   (a) whether there is a valid arbitration agreement,

   (b) whether the tribunal is properly constituted, and

   (c) what matters have been submitted to arbitration in accordance with the arbitration agreement.

Arbitration Act 1996, § 30 (Eng.).

CNA argues that incorporation of the Arbitration Act 1996's rules is distinguishable from incorporation of the AAA rules, and that the majority rule discussed above should not apply. Under Rule 7(a) of the AAA Commercial Arbitration Rules, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* Am. Arbitration Ass'n, Commercial Arbitration Rules & Mediation Procedures, *R–7: Jurisdiction* (eff. Oct. 1, 2013), available at https://www.adr.org/sites/default/files/Commercial%20Rules.pdf. CNA contends that Rule 7(a)'s use of "shall" arguably *"requires* questions of arbitrability to be decided by an arbitrator." On the other hand, CNA contends that the Arbitration Act 1996 "merely states that arbitrators in any given proceeding **may** rule on their own jurisdiction."

We find this argument unpersuasive. When these formulations are read in context, we find no material distinction between an arbitrator that "may rule on its own substantive jurisdiction" and one who "shall have the power to rule on his or her own jurisdiction." Both formulations empower the arbitrator to rule on arbitrability questions. But neither formulation mandates that the arbitrator *must* determine arbitrability when the parties have opted otherwise.

We find persuasive the above-cited Texas and federal cases holding that express incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent to delegate issues of arbitrability to the arbitrator. Applying the reasoning of those cases here, we conclude that there is clear and unmistakable evidence that the parties intended for the arbitrator to decide arbitrability based on (1) the parties' express incorporation of

the Arbitration Act 1996, in combination with (2) a broad arbitration agreement sending to the arbitrator "all claims, disputes or differences whatsoever between the parties arising out of or in connection with this contract, including without limitation to any question regarding its existence, validity or termination." [3]

Finally, CNA argues that the majority rule should not apply because the arbitration agreement provides for certain non-arbitration remedies. Specifically, the agreement provides:

Notwithstanding the provisions of this [arbitration] clause, [Trafigura] shall have the right to commence and pursue proceedings for interim or conservatory relief against [CNA] in any court in any jurisdiction and the commencement and pursuit of such proceedings in any one court or jurisdiction shall not preclude [Trafigura] commencing or pursuing proceedings in any other court or juris-

---

**3.** In other cases, our court and several sister courts have recognized the majority rule, but found that it did not apply in the appeals before them because there was other evidence suggesting that the parties did not intend to refer all disputes to arbitration. *See, e.g., Lucchese Boot Co. v. Solano*, 473 S.W.3d 404, 412-14 (Tex. App.—El Paso 2015, no pet.) (incorporation of TAMS rules—which allow arbitrator to determine arbitrability—was not clear and unmistakable evidence that parties intended to have arbitrator decide arbitrability where arbitration agreement was not broad, but rather identified specific claims that were covered and excluded); *BossCorp, Inc. v. Donegal, Inc.*, 370 S.W.3d 68, 76 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (applying Delaware law and noting that, "[w]here an arbitration agreement contains carve-outs and exceptions providing judicial remedies for disputes, something more than mere reference to the AAA Rules for the conduct of the arbitration is needed to show that the parties clearly and unmistakably intended to delegate arbitrability to the arbitrator instead of the court"); *Haddock v. Quinn*, 287 S.W.3d 158, 175 (Tex. App.—Fort Worth 2009, pet. denied) (general reference to AAA

rules was not clear and unmistakable evidence that arbitrator should decide arbitrability where agreement was otherwise silent and AAA Rule 7(a) did not exist when arbitration agreement was originally added to partnership agreement); *Burlington Res. Oil & Gas Co. v. San Juan Basin Royalty Tr.*, 249 S.W.3d 34, 41 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (express incorporation of AAA's rules did not constitute clear and unmistakable evidence of parties' delegation of issues of arbitrability to arbitrator where arbitration agreement restricted the arbitrator's reach only to specifically identified "audit disputes" and only for specific amounts); *In re Ford Motor Co.*, 220 S.W.3d 21, 23-24 (Tex. App.—San Antonio 2006, orig. proceeding) (express incorporation of AAA rules did not constitute unmistakable evidence that parties intended for arbitrator to decide whether nonparties were bound by arbitration agreement). The reasoning in those cases is not applicable here because (1) the First Contract's arbitration clause was broad and did not exclude any claims from arbitration; and (2) Trafigura was not seeking to compel a nonparty to arbitrate.

diction (whether concurrently or not) if and to the extent permitted by the applicable law.

Notwithstanding the foregoing arbitration provisions, [Trafigura] shall have the option of referring any Dispute to the High Court of Justice in London, England, or any other court having jurisdiction over the Dispute (the "Court").

In support of this proposition, CNA relies on an opinion from the Delaware Supreme Court. *See James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 80-81 (Del. 2006) (where arbitration clause allowed nonbreaching members to obtain injunctive relief and specific performance in court, Delaware Supreme Court concluded that, "despite the broad language at the outset, not all disputes must be referred to arbitration. Since this arbitration clause does not generally refer all controversies to arbitration, the federal majority rule does not apply, and something other than the incorporation of the AAA rules would be needed to establish that the parties intended to submit arbitrability questions to an arbitrator"). Because we are not applying Delaware law to this dispute, we are not bound by the Delaware Supreme Court's decision. In this instance, we are not persuaded that the potential availability of limited "interim and conservatory" relief in court—exercisable solely by Trafigura, the party seeking to compel arbitration—indicates that the parties did not intend for the arbitrator to determine arbitrability.

### CONCLUSION

We conclude that the trial court erred by determining whether CNA's claims fell within the scope of the First Contract's arbitration agreement—a determination the parties had reserved for the arbitrator. Accordingly, we reverse the trial court's order denying Trafigura's motion to com-

pel arbitration, and we remand this case for proceedings consistent with this opinion.