

## Fourth Court of Appeals
### San Antonio, Texas

### OPINION

No. 04-18-00845-CV

Raymond G. **ROMERO**,
Appellant

v.

Frank **HERRERA**, Jr.,
Appellee

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CI08392
Honorable Karen H. Pozza, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Luz Elena D. Chapa, Justice
                Beth Watkins, Justice

Delivered and Filed: June 12, 2019

REVERSED AND REMANDED IN PART, DISMISSED IN PART

Frank Herrera, Jr. filed the underlying suit to enjoin part of an ongoing arbitration proceeding and sought a declaration from the trial court that one of his several contract disputes with Raymond Romero is not arbitrable. Romero filed a motion to compel arbitration, which the trial court denied. The trial court rendered a partial summary judgment order declaring the disputed contract claim not arbitrable. We reverse the trial court's order denying the motion to compel and remand with instructions. We dismiss Romero's appeal of the partial summary judgment order.

## BACKGROUND

Herrera and Romero, as well as two others who are not parties to this appeal, entered into four agreements for purposes of forming a business entity that would provide wheel and tire manufacturing and assembly services to Toyota Motor Manufacturing Texas, Inc., located in San Antonio, Texas. Two of the four agreements, described below, contain arbitration provisions:

- **The Joint Venture Agreement (the Valiente Agreement)**: This contract is a joint venture agreement executed on December 15, 2004, to create Valiente International Ventures. This contract, signed by Herrera and Romero in their individual capacities, does not contain an arbitration agreement.

- **Limited Partnership Agreement**: This contract was executed on December 16, 2004, and formed a limited partnership, Hero Assemblers. This contract contains an arbitration agreement and was signed by Herrera and Romero in their individual capacities.

- **The Company Agreement**: This contract was executed on December 16, 2004, to form Hero Management to serve as Hero Assemblers' general partner. This contract also contains an arbitration agreement and was signed by Herrera and Romero in their individual capacities.

- **Non-Compete Agreement**: This contract was executed on December 16, 2004, and the parties agreed not to compete in North America. This Non-Compete contract is incorporated by reference into both the Limited Partnership Agreement and the Company Agreement, but does not itself contain an arbitration agreement.

In February 2018, Romero filed claims in arbitration against Herrera for allegedly starting a competing company in Mexico. In the arbitration proceeding, Romero alleged Herrera breached the Non-Compete Agreement, and further alleged Herrera's breach of the Non-Compete Agreement breached the other three agreements.

Herrera filed a lawsuit against Romero in district court seeking a declaratory judgment, injunctive relief, and attorney's fees. Herrera sought numerous declarations including:

- "The Valiente Agreement does not authorize Defendant to compel the arbitration of his claims or requests for relief against Plaintiff which arise from or relate to the Valiente Agreement";

- ▪ The Valiente Agreement does not include any of the terms and conditions of the Company and Limited Partnership Agreements; and

- ▪ Any breach of the Company, Limited Partnership, and Non-Compete Agreements "does not constitute a breach . . . of the Valiente Agreement."

Herrera also sought a permanent injunction to preclude Romero from arbitrating any claims related to the Valiente Agreement and requiring dismissal of those claims.

Herrera filed a motion for summary judgment on the ground the Valiente Agreement does not contain an arbitration provision. In addition to responding to the summary judgment motion, Romero filed a motion to compel arbitration, arguing Herrera had agreed to submit disputes about the scope of the arbitration agreements to arbitration, not to litigation in a trial court. The trial court heard both motions, and signed orders denying Romero's motion to compel arbitration and granting Herrera's motion for partial summary judgment. The partial summary judgment order granted Herrera declaratory relief that Romero "cannot compel the arbitration of [his] claims against [Herrera] regarding the interpretation or enforcement of the [joint venture] agreement." Romero appeals the trial court's order denying his motion to compel arbitration and trial court's partial summary judgment order.

### MOTION TO COMPEL

"We review a trial court's order denying a motion to compel arbitration for abuse of discretion." *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). "We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo." *Id.* "Whether the claims in dispute fall within the scope of a valid arbitration agreement and whether a party waived its right to arbitrate are questions of law, which are reviewed de novo." *Id.*

The framework for analyzing a motion to compel generally involves three inquiries. *See id.* First, the party seeking to compel arbitration "must establish the existence of a valid arbitration

agreement." *Id.* Second, the party seeking to compel arbitration must establish "that the claims at issue fall within the scope of that agreement." *Id.* Third, if that party satisfies this burden, the trial court must compel arbitration unless the party opposing arbitration "prove[s] an affirmative defense to the provision's enforcement, such as waiver." *Id.*

## A. Existence of a Valid Arbitration Agreement

The existence of a valid arbitration agreement "is a gateway matter," as arbitration is "a creature of contract between consenting parties. *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 629 (Tex. 2018). The parties dispute whether a valid arbitration agreement exists. However, the parties do not dispute: (1) there is no arbitration agreement in the Valiente Agreement; and (2) arbitration agreements are contained in the Company and Limited Partnership Agreements. Herrera implicitly posits that, to be "a valid arbitration agreement" as to the breach of the Joint Venture Agreement claims Romero filed in arbitration, the arbitration agreement must be contained within the four corners of the Joint Venture Agreement. Romero implicitly posits that whether an arbitration provision applies to a dispute beyond the four corners of the contract in which the provision appears requires construing that arbitration provision to determine the parties' intent, which relates to the second step of whether "the claims at issue fall within the scope of that agreement." *See Henry*, 551 S.W.3d at 115.

An arbitration agreement does not "have to be included in each of the contract documents it purports to cover." *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005, orig. proceeding) (per curiam). Parties may therefore agree in one contract to arbitrate disputes beyond the scope of that contract. *See id.* For example, parties may execute a stand-alone arbitration agreement, which would necessarily apply to disputes beyond the four corners of the arbitration agreement. *See id.*; *NACE Int'l v. Johnson*, No. 01-15-00529-CV, 2016 WL 4486158, at *3 (Tex. App.—Houston [1st Dist.] Aug. 25, 2016, no pet.) (mem. op. on reh'g) ("When considering stand-

alone arbitration agreements, mutually binding promises are required as the only consideration rendered to create the contract."). Parties may also enter into a contract containing an arbitration agreement that applies to non-contractual claims. For example, parties may agree to arbitrate personal injury claims under certain circumstances and statutory employment discrimination claims. *See* TEX. CIV. PRAC. & REM. CODE § 171.002(a)(3), (c); *see, e.g.*, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 65 (2010) (considering stand-alone arbitration agreement as it pertained to an employment-discrimination suit). Thus, for purposes of this first inquiry, the writing in which the parties agreed to arbitrate appears immaterial; it is sufficient the parties have a valid written agreement to arbitrate. *See Jody James Farms*, 547 S.W.3d at 631. "So long as the parties agreed to arbitrate this dispute, it does not matter which document included that agreement." *AdvancePCS Health*, 172 S.W.3d at 606. Whether a valid written arbitration agreement covers a particular dispute requires construing the arbitration provision to determine its scope, which is the second inquiry. *See Henry*, 551 S.W.3d at 115; *see, e.g.*, *Longoria v. CKR Prop. Mgmt., LLC*, No. 14-18-00100-CV, 2018 WL 6722340, at *4 (Tex. App.—Houston [14th Dist.] Dec. 21, 2018, no pet. h.) (determining the scope of a stand-alone arbitration agreement by construing "its unambiguous terms"); *Cash Biz, LP v. Henry*, 539 S.W.3d 342, 350 (Tex. App.—San Antonio 2016) (applying arbitration provision to matter outside of the contract, noting, "While the torts alleged are based upon independent acts outside the formation or performance of the Loan Contracts, the arbitration provision compels a very broad definition of 'dispute.'"), *aff'd*, 551 S.W.3d 111 (Tex. 2018).

The undisputed facts establish the existence of two valid arbitration agreements between the parties. Romero and Herrera both signed the Company Agreement and the Limited Partnership Agreement. Both agreements contain arbitration provisions. These two provisions require certain disputes to "be resolved by binding arbitration." Herrera emphasizes that the Joint Venture Agreement does not contain an arbitration provision, suggesting the parties' arbitration agreements

do not apply to disputes about the Joint Venture Agreement because those arbitration agreements are not contained within the Joint Venture Agreement. But the scope of an arbitration agreement turns on its terms, not on the particular written instrument in which the arbitration agreement appears. *See AdvancePCS Health*, 172 S.W.3d at 606; *Longoria*, 2018 WL 6722340, at *4; *Cash Biz*, 539 S.W.3d at 350. Thus, for purposes of the first motion-to-compel inquiry—the existence of a valid arbitration agreement—it is immaterial that the parties' arbitration agreement is not contained within the four-corners of the Joint Venture Agreement. *See AdvancePCS Health*, 172 S.W.3d at 606. Because the undisputed facts establish the existence of valid arbitration agreements between the parties, Romero met his burden as to the first inquiry. We therefore turn to considering the second inquiry: whether the scope of either of the two arbitration agreements covers an alleged breach of the Joint Venture agreement.

**B. Whether the "Claims at Issue" Fall Within the Scope of the Arbitration Agreements**

The second inquiry is whether the "claims at issue" fall within the scope of either of the two arbitration agreements. *Henry*, 551 S.W.3d at 115. This second inquiry is a decision ordinarily committed to the trial court. *Jody James Farms*, 547 S.W.3d at 631. "Parties can, however, agree to arbitrate arbitrability." *Id.* In other words, parties can agree to entrust an arbitrator, rather than a trial court, to fairly and correctly construe an arbitration agreement to determine what claims fall within the agreement's scope, and to act as the gatekeeper to determine what claims are arbitrable. *See id.*; *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[T]he question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter."). Recently, the Supreme Court of the United States reinforced this principle, holding that when the parties have delegated arbitrability questions to the arbitrator, the arbitrator decides whether a claim is arbitrable even when the claim is clearly outside of the scope of the arbitration agreement. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529

(2019) (precluding courts from intervening even when a party's assertion that a claim is arbitrable is "wholly groundless"). However, "[a] presumption favors adjudication of arbitrability by the courts absent clear and unmistakable evidence of the parties' intent to submit that matter to arbitration." *Jody James Farms, JV*, 547 S.W.3d at 631.

The "claims at issue" in the underlying suit are not the claims Romero filed in arbitration; the "claims at issue" are those Herrera has alleged in the underlying suit he filed in the trial court. Herrera's claims in the trial court relate to the arbitrability of the claims Romero filed in the arbitration proceeding. Specifically, Herrera claims Romero's "claims and requests for relief [filed in the arbitration proceeding] with respect to the Valiente [Joint Venture] Agreement are not subject to arbitration." Thus, Herrera's claims in the trial court ultimately seek the trial court's determination of the meaning and scope of the arbitration provisions in the Company Agreement or the Limited Partnership Agreement. Consequently, to prevail on his motion to compel, Romero had the burden to establish the parties' dispute about the scope of the arbitration provisions itself falls within the scope of the arbitration provisions in the Company Agreement and the Limited Partnership Agreement. Simply stated, Romero had the burden to establish the parties clearly and unmistakably intended to "agree to arbitrate arbitrability" and submit disputes about the scope of an arbitration agreement to arbitration. *See id.*

Romero produced the Company Agreement and the Limited Partnership Agreements. The arbitration provision in the Limited Partnership Agreement provides:

> Any dispute regarding interpretation or enforcement of any of the Members' rights or obligations hereunder shall first be referred to non-binding mediation for resolution, and only if the dispute is not resolved through non-binding mediation shall it be resolved by binding arbitration ***according to the rules of the American Arbitration Association*** in San Antonio, Texas.

(emphasis added). Similarly, the arbitration provision in the Company Agreement provides:

> Any dispute regarding interpretation or enforcement of any of the Partners' rights or obligations hereunder shall first be referred to non-binding mediation for resolution, and only if the dispute is not resolved through non-binding mediation shall it be resolved by binding arbitration *according to the rules of the American Arbitration Association* in San Antonio, Texas.

(emphasis added). The American Arbitration Association (AAA) rules "state that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'" *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (quoting AAA Rule 7(a)). "A number of our sister courts have adopted a general rule that when a broad arbitration agreement exists between the parties, and when that agreement incorporates arbitration rules that specifically empower the arbitrator to decide issues of arbitrability, then the incorporation of those rules constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability to the arbitrator." *Trafigura Pte. Ltd. v. CNA Metals Ltd.*, 526 S.W.3d 612, 616 (Tex. App.—Houston [14th Dist.] 2017, no pet.).[1]

The arbitration provisions in the Company and Limited Partnership Agreements expressly incorporate the AAA rules. The AAA rules specifically empower the arbitrator to decide issues of arbitrability and establish Romero and Herrera "agree[d] to arbitrate arbitrability." *See id.* Romero and Herrera thereby expressed their clear and unmistakable "intent to delegate arbitrability to the arbitrator." *See id.* In doing so, both agreed to entrust an arbitrator, not a trial court, with making fair and correct determinations as to the meaning and scope of an arbitration agreement and whether certain claims were arbitrable. *See Jody James Farms*, 547 S.W.3d at 631. Consistent with our sister courts and the vast majority of federal courts, we hold the parties agreed to arbitrate

---

[1] Generally, Texas courts that have addressed this issue have reached the same conclusion. *Id.* at 616–17 (citing Fort Worth, Amarillo, Houston [1st], Dallas, and Corpus Christi). Most federal courts have reached the same conclusion. *See Petrofac*, 687 F.3d at 675 (citing authorities).

arbitrability, and thus a dispute about the scope of the arbitration agreements must be decided in arbitration, not in the trial court. Romero has therefore satisfied his burden to establish the parties' disputes about the meaning and scope of the arbitration provisions, themselves, fall within the scope of the arbitration provisions.

**C. Contract Defenses to Enforcement of the Arbitration Agreements**

Because Romero satisfied his burden regarding the first two inquiries, the trial court was required to compel arbitration unless Herrera "prove[d] an affirmative defense to the provision's enforcement, such as waiver." *See Henry*, 551 S.W.3d at 115. In response to Romero's motion to compel, Herrera did not raise any contract defense to the enforcement of the arbitration provisions. We note both arbitration provisions require that disputes "first be referred to non-binding mediation for resolution," but Herrera never alleged or proved this condition precedent was not satisfied as to the dispute over the issue of arbitrability. *See Martel v. Comte*, No. 12-18-00249-CV, 2019 WL 1273130, at *4 (Tex. App.—Tyler Mar. 20, 2019, no pet. h.) (mem. op.) (stating breach of condition precedent goes to "enforceability of an arbitration clause if the condition attaches to that clause"); *Dall. Cardiology Assocs., P.A. v. Mallick*, 978 S.W.2d 209, 212 (Tex. App.—Texarkana 1998, pet. denied) (holding failure to mediate as a prerequisite to arbitration relates to enforceability). Because the trial court was required to compel arbitration, we hold the trial court abused its discretion by denying Romero's motion to compel arbitration.

**PARTIAL SUMMARY JUDGMENT ORDER**

In its partial summary judgment order, the trial court granted declaratory relief in favor of Herrera. In his notice of appeal, Romero challenges the trial court's partial summary judgment order. In his brief, Romero "requests that this Court permit him to appeal" the partial summary judgment order, and states that if we "refuse to exercise jurisdiction over" his appeal of the partial summary judgment order, he "will proceed to seek mandamus relief."

Romero has not "specifically request[ed] that his appeal be treated as a mandamus petition." *See CMH Homes v. Perez*, 340 S.W.3d 444, 452, 454 (Tex. 2011). He seeks only to appeal the partial summary judgment order. However, we lack appellate jurisdiction over appeals from such partial summary judgment orders because they are not final or otherwise appealable, and we lack discretion to permit an appeal of the non-appealable order because Romero has not followed the statutory procedures for pursuing a permissive appeal. *See City of San Antonio v. Tommy Harral Constr., Inc.*, 486 S.W.3d 77, 80 (Tex. App.—San Antonio 2016, no pet.); *Gulf Coast Asphalt Co., L.L.C. v. Lloyd*, 457 S.W.3d 539, 542–43 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

## CONCLUSION

We reverse the trial court's order denying Romero's motion to compel arbitration. This case is remanded to the trial court with instructions to render an order compelling the parties to arbitrate the claims Herrera alleged in the underlying suit filed in the trial court, which pertain to whether the alleged breach of the Joint Venture Agreement is a dispute that falls within the scope of the arbitration provisions contained in the Company and Limited Partnership Agreements. Romero's appeal of the partial summary judgment order is dismissed for lack of jurisdiction.

Luz Elena D. Chapa, Justice