## WILLIAMSBRIDGE MANOR NURSING HOME,
### Plaintiff,

v.

## LOCAL 144 DIVISION OF 1199, NATIONAL HEALTH & HUMAN SERVICES EMPLOYERS UNION, AFL–CIO, Defendant.

### No. 00 Civ. 1556(SAS).

United States District Court, S.D. New York.

June 15, 2000.

David Lew, Aaron C. Schlesinger, Peckar & Abramson, P.C., New York, NY, for Plaintiff.

Irwin Bluestein, Hanan B. Kolko, Meyer, Suozzi, English & Klein, P.C., New York, NY, Daniel J. Ratner, Levy, Ratner & Behroozi, P.C., New York, NY, for Defendant.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff Williamsbridge Manor Nursing Home ("Williamsbridge") moves, pursuant to Federal Rule of Civil Procedure 56, to permanently enjoin an arbitration hearing related to the suspension of one of its employees, Cynthia Sullivan. Defendant, New York's Health & Human Services Employers Union 1199/SEIU, AFL–CIO (the "Union"), which represents Sullivan, opposes the motion and cross-moves for summary judgment and/or to dismiss as moot plaintiff's petition to permanently enjoin the arbitration. For the reasons set forth below, plaintiff's motion to permanently enjoin the arbitration is granted and defendant's motion to dismiss for mootness is denied.

### I. Background

The following facts are taken from the Rule 56.1 statements filed by the parties and from various depositions. Unless otherwise indicated, the facts are undisputed.

The Union is the collective bargaining representative of certain Williamsbridge employees, including Cynthia Sullivan. *See* Defendant's 4/7/00 Statement of Material Facts ("Def. 56.1") ¶ 1. The collective bargaining agreement (the "CBA") between the Union and Williamsbridge expired by its own terms on October 1, 1997. *Id.* ¶ 12. Since that time, the employees represented by the Union have continued to work, without striking or picketing. *Id.* ¶ 14.

The events that resulted in Sullivan's suspension occurred on December 23, 1998, and she served her suspension on January 13–15 and 18–19, 1999. *See* Plaintiff's 4/6/00 Local Rule 56.1 Statement ("Pl. 56.1") ¶¶ 13–14. The Union grieved Sullivan's suspension, but the matter was not resolved in the grievance process. *See* Def. 56.1 ¶ 3. In a letter to Arbitrator Martin F. Scheinman, Esq. dated February 22, 1999, the Union requested an arbitration of the Sullivan suspension. *Id.* ¶ 4. Williamsbridge never received a valid Notice of Intention to Arbitrate the Sullivan suspension as required by New York Civil Practice Law and Rules ("CPIR") § 7503(c). *See* Plaintiff's 4/19/00 Reply to Defendant's 4/7/00 Local Rule 56.1 Statement ¶ 4.

On or about June 17, 1999, the Union contacted Williamsbridge to schedule an arbitration hearing, but was told that its attorney, David Lew, Esq., was unavailable until September 1999. *See* Affidavit of David Lew ("Lew Aff.") ¶¶ 3–4; Def. 56.1 ¶ 5. Lew never submitted any prospective date to arbitrate the Sullivan suspension and never consented to appear on behalf of Williamsbridge. *See* Lew Aff. ¶¶ 6–8.

On February 14, 2000, after the parties had repeatedly failed to agree on an arbitration date, Arbitrator Scheinman sent a

letter to both parties scheduling the Sullivan hearing for March 6, 2000. *See* 2/14/00 Letter from Arbitrator Scheinman to Plaintiff and Defendant, Ex. B to 5/9/00 Affidavit of Plaintiff's Attorney Aaron C. Schlesinger; Def. 56.1 ¶ 11. On February 23, 2000, upon receipt of Arbitrator Scheinman's letter, Williamsbridge filed an Order to Show Cause and Petition with the New York State Supreme Court, seeking a stay of the Sullivan arbitration. *See* Pl. 56.1 ¶ 5; Lew Aff. ¶ 13. On or about February 29, 2000, the Union removed Williamsbridge's Petition to this Court. *See* Pl. 56.1 ¶ 6.

At a March 14, 2000 conference, Williamsbridge sought permission to move to stay the Sullivan arbitration pending resolution of the parties' cross motions for summary judgment. This request was denied. *See* Plaintiff's 5/10/00 Counterstatement of Undisputed Material Facts ¶¶ 6–12.

By letters dated March 22, 2000 and April 3, 2000, Williamsbridge requested that Arbitrator Scheinman refrain from proceeding with the Sullivan arbitration. *Id.* ¶ 15. Despite this request, the Sullivan arbitration was held on April 18, 2000. *Id.* ¶¶ 16–17. Williamsbridge did not appear at the arbitration. *Id.* ¶ 18. Arbitrator Scheinman has not yet rendered a decision. *Id.* ¶ 19.

## II. Applicable Legal Standard

### A. Summary Judgment

A motion for summary judgment may be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law. A reasonably disputed, legally essential issue is both genuine and material and must be resolved at trial." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir.1999) (internal quotations and citations omitted). In determining whether genuine issues of material fact are in dispute, courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).

### B. Jurisdiction

This Court has jurisdiction over this dispute under § 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, without regard to the amount in controversy or the citizenship of the parties. The Union removed this action from the New York Supreme Court pursuant to 28 U.S.C. § 1441 (removal jurisdiction). As required by 28 U.S.C. § 1446(b), the Union filed its removal petition within thirty days of receiving the Order to Show Cause.

## III. Discussion

The Union advances three theories in support of its claim that the Sullivan suspension is arbitrable. *First*, the Union contends that the duty to arbitrate arises under the CBA. *Second*, the Union argues that the conduct of the parties following the expiration of the CBA has produced an implied-in-fact contract under which Williamsbridge is required to arbitrate the matter. *Third*, the Union claims that Williamsbridge's motion to enjoin the arbitration hearing is moot because the hearing already has occurred.

### A. The Dispute Does Not Arise under the CBA

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., arbitration " 'is a matter of contract and a party cannot be required to submit to arbitration

any dispute which [it] has not agreed so to submit.'" *Teamsters Local Union No. 122 v. August A. Busch & Co. of Massachusetts, Inc.,* 932 F.Supp. 374, 378 (D.Mass.1996) (citing *PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1198 (2d Cir.1996) (quoting *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986))). It is well established that "... whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance is undeniably an issue for judicial determination." *AT & T Technologies,* 475 U.S. at 649, 106 S.Ct. 1415 (1986). Before Williamsbridge can be compelled to arbitrate the Sullivan suspension, this Court must first determine that Williamsbridge is a party to an enforceable collective bargaining agreement.

In *Litton Financial Printing v. NLRB,* 501 U.S. 190, 205–08, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991), the Supreme Court addressed the scope of an employer's obligation to arbitrate grievances commenced after the expiration of a collective bargaining agreement. The Court noted that the "object of an arbitration clause is to implement a contract, not to transcend it." *Id.* at 205, 111 S.Ct. 2215. Moreover, the Court explained that after the expiration of a collective bargaining agreement, the contractual obligations of the parties, including the duty to arbitrate, cease to exist. *See id.* at 206, 111 S.Ct. 2215; *see also Flannery Parking Systems, Inc. v. Local 917,* No. 95 Civ. 9522, 1996 WL 403041, at *3–5 (S.D.N.Y. July 18, 1996) (holding that an arbitration clause is not valid if the original collective bargaining agreement has expired and no other agreement exists); *Mount Ararat Cemetery v. Cemetery Workers,* 975 F.Supp. 445 (E.D.N.Y.1997) (holding that the expired agreement contains no language to indicate that the par-

ties intended the arbitration provisions to continue in effect beyond the contract's expiration).

Nevertheless, the *Litton* Court held that post-expiration grievances are arbitrable if they "arise under the expired collective bargaining agreement." *Litton,* 501 U.S. at 205–06, 111 S.Ct. 2215. A post-expiration dispute will "arise under" an expired CBA only "[1] where it involves facts and occurrences that arose before expiration, [2] where an action taken after expiration infringes a right that accrued or vested under the agreement, or [3] where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Id.* In this case, the first two *Litton* exceptions are unavailing, because the CBA expired on September 30, 1997 and the incident resulting in the Sullivan suspension occurred in December 1998, well over a year later.

█ The Union argues, however, that Williamsbridge's obligation to arbitrate the Sullivan suspension arises under the third *Litton* exception. In discussing this exception, the *Litton* Court explained that "if a collective bargaining agreement provides in explicit terms that certain benefits continue after the agreement's expiration, disputes as to such continuing benefits may be found to arise under the agreement and so become subject to the contract's arbitration provisions." *Id.* at 207–08, 111 S.Ct. 2215. But the Union has provided no evidence that any benefits survive the termination of the CBA.[1] This failure is fatal to the Union's claim.

## B. There Is No Implied–In–Fact Agreement

In its second argument, the Union urges this Court to follow the lead of the Third Circuit in *Luden's Inc. v. Local Union No.*

---

**1.** By contrast, in *Local 74, Service Employees Int'l Union, AFL–CIO v. Ecclesiastical Maintenance Services, Inc.,* 55 F.3d 105, 106 (2d Cir.1995), the Union provided evidence of an oral agreement to extend all terms of an ex-

pired CBA, including its arbitration provision, pending resolution of negotiations over a new CBA. Although the Union cites *Local 74* to support its argument, that case simply demonstrates the argument's deficiencies

6 of the Bakery, Confectionery, and Tobacco Workers' Int'l Union of America, 28 F.3d 347 (3rd Cir.1994). In *Luden's*, the court held that when a contract expires, and "the parties continue to act as if, they are performing under a contract, the material terms of the prior contract will survive intact unless either one of the parties clearly and manifestly indicates, through words or conduct, that it no longer wishes to continue to be bound ..." *Id.* at 355–56. This test reverses the presumptions created in *Litton* and requires the party relying on the expiration of the CBA to establish that an implied-in-fact contract has not been created. I cannot accept the Third Circuit's test. *See Busch*, 932 F.Supp. at 380 (explicitly declining to adopt *Luden's*).

▮▮▮▮ Post–CBA expiration conduct occurs within a different legal paradigm than conduct pursuant to an ordinary employment contract. *See id.* "[W]hen the employee's services are continued after the expiration of the definite time [of the contract] without objection, the inference is ordinarily that the parties have assented to another contract for a term of the same length with the same salary and conditions of service." *Luden's*, 28 F.3d at 355 (quoting 2 Williston, Contracts § 6.42 at 452 (4 th ed. Lord ed.1990)). The same is not true for collective bargaining agreements. Under the unilateral change doctrine announced in *National Labor Relations Board v. Katz*, 369 U.S. 736, 744–47, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962), employers are prohibited from unilaterally changing the material terms of an expired collective bargaining agreement regarding certain mandatory subjects, such as wages. Optional terms, however, such as arbitration clauses, do not fall within this doctrine. In fact, the *Litton* court specifically held that "... an arbitration clause does not, by operation of the NLRA [National Labor Relations Act] as interpreted in *Katz*, continue in effect after the expiration of a collective bargaining agreement." *Litton*, 501 U.S. at 199, 111 S.Ct. 2215 (citing *Hilton–Davis Chemical Co.*, 185 N.L.R.B. 241 (1970)).

▮▮▮▮ For an implied-in-fact agreement to be recognized in this context, some form of mutual assent between the two parties has to exist. Although the Union has provided no evidence that Williamsbridge accepted an obligation to arbitrate once the CBA expired, it contends that Williamsbridge's attempt to delay the arbitration hearing constitutes an implied-in-fact agreement. Because Williamsbridge never received a valid Notice of Intention to Arbitrate the Sullivan suspension, however, Williamsbridge was never compelled to contest the arbitrability of the suspension until receiving Arbitrator Scheinman's February 14, 2000 letter. *See* Lew Aff. ¶ 12. Nine days after receipt of the letter, Williamsbridge objected to the arbitration and initiated this action. Williamsbridge has neither selected an arbitrator nor participated in the arbitration in any meaningful way. "[Such] conduct is consistent with its unwillingness to arbitrate the dispute and inconsistent with any theory of implied consent." *Flannery*, 1996 WL 403041 at * 14. No reasonable trier-of-fact could infer the existence of an implied-in-fact agreement between Williamsbridge and the Union to arbitrate post-expiration disputes.

## C. Williamsbridge's Petition Is Not Moot

▮▮▮▮ Generally, a case is moot "only when it is impossible for the court to grant any effectual relief to a prevailing party." *In re Kurtzman*, 194 F.3d 54, 58 (2d Cir. 1999) (citing *Capital Communications Fed. Credit Union v. Boodrow*, 126 F.3d 43, 46 (2d Cir.1997)) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992)). The Union maintains that because an arbitration of the Sullivan suspension was held on April 18, 2000, Williamsbridge's petition for a permanent stay of arbitration is moot.

In *Capital District Chapter of New York v. International Brotherhood of Painters and Allied Trades, Local Union 201,* 743 F.2d 142 (2d Cir.1984), however, the court was faced with a similar situation. There, after an arbitration award had already been rendered, the court, sua sponte, converted the request to stay arbitration into a request to vacate the arbitration award. *See id.* at 146. The Union contends that because the Arbitrator in this case has not yet issued his ruling, Williamsbridge's motion cannot be converted to a motion to vacate. According to the Union, a motion to vacate is not yet "ripe". *See Thomas v. City of New York,* 143 F.3d 31, 34 (2d Cir.1998) ("[W]hen resolution of an issue turns on whether 'there are nebulous future events so contingent in nature that there is no certainty they will ever occur,' the case is not yet ripe for adjudication.") (quoting *In re Drexel Burnham Lambert Group Inc.,* 995 F.2d 1138, 1146 (2d Cir. 1993)).

■ There is nothing nebulous or contingent about the future events in this case. The arbitration has taken place and the decision soon will be rendered. If a court has the power to convert a motion to stay an arbitration into a motion to vacate an award after the arbitrator has ruled, it surely has the power to stay an arbitration prior to the arbitrator's ruling. The arbitration process is not complete until an arbitration award is confirmed. Until such time as the award is final, the court retains the power to stay that process. Thus, Williamsbridge's motion to stay the arbitration is not moot.

## IV. Conclusion

For the foregoing reasons, plaintiff's motion to enjoin the arbitration is granted and defendant's motion to dismiss for mootness is denied. The Clerk of the Court is directed to close this case.