**Reversed and Remanded and Majority Opinion and Concurring Opinion filed December 21, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00100-CV

---

### DENISE LONGORIA, Appellant

### V.

### CKR PROPERTY MANAGEMENT, LLC, Appellee

---

**On Appeal from the 270th District Court
Harris County, Texas
Trial Court Cause No. 2017-72827**

---

## M A J O R I T Y   O P I N I O N

Appellant Denise Longoria signed an arbitration agreement before beginning her employment with appellee CKR Property Management, LLC ("CKR Property"). The parties' arbitration agreement states that Longoria and CKR Property agree to arbitrate "any claim or dispute between them or against the other . . . whether related to the employment relationship or otherwise . . . ." Longoria resigned from CKR Property and was rehired by CKR Property approximately ten months later. Longoria

did not sign a separate arbitration agreement before beginning her second period of employment.

CKR Property fired Longoria six months after she was rehired and sued her for claims arising from her second employment period. Longoria moved to compel arbitration and the trial court denied Longoria's motion. For the reasons outlined below, we reverse the trial court's order denying arbitration and remand the cause to the trial court for proceedings consistent with this opinion.

## BACKGROUND

CKR Property, which manages multi-family residential apartment complexes, hired Longoria in June 2015 to supervise operations at multiple properties. Before beginning her employment at CKR Property, Longoria signed an arbitration agreement entitled "Acknowledgement of Receipt of Arbitration Agreement." The arbitration agreement states, in relevant part:

> Denise N. Longoria and CKR Property Management agree that they prefer and choose to arbitrate any dispute they may have instead of litigating in court before a judge or jury. Therefore, they agree that any claim or dispute between them or against the other or any agent or employee of the other, whether related to the employment relationship or otherwise, including those created by practice, common law, court decision, or statute now existing or created later, including any related to allegations of violations of state or federal statutes related to discrimination, and all disputes about the validity of this arbitration clause, shall be resolved by final binding arbitration by the American Arbitration Association, under the National Rules for the Resolution of Employment Disputes. CKR Property Management agrees to pay all costs of the arbitration, except in that [sic] each party will bear their own legal fees. Fees paid are subject to the award of fees by the arbitrator, as provided by law and arbitration rules. This agreement shall be governed by and interpreted under the Federal Arbitration Act . . . .

Longoria signed the agreement and dated it June 15, 2015. The record does not

contain any other documents Longoria signed before beginning her first employment period. Longoria resigned from CKR Property in June 2016.

CKR Property rehired Longoria in April 2017. Before beginning her second period of employment, Longoria signed a "Confidentiality and Non-Competition Agreement." This second agreement does not contain any provisions addressing either (1) the previously signed arbitration agreement; or (2) the arbitrability of claims arising under the non-compete agreement. Longoria did not sign a separate arbitration agreement before beginning her second employment period. CKR Property terminated Longoria's employment six months later.

CKR Property sued Longoria in October 2017, asserting claims arising from Longoria's alleged breach of the non-compete agreement. Longoria filed a general denial and asserted affirmative defenses.

Longoria filed a motion to compel arbitration under the Federal Arbitration Act ("FAA"). *See generally* 9 U.S.C.A. §§ 1-16 (West 2009). CKR Property responded and the trial court held a hearing on the motion. The trial court signed an order on January 30, 2018, denying Longoria's motion to compel arbitration. Longoria timely appealed.

### STANDARD OF REVIEW

We review the trial court's denial of a motion to compel arbitration under an abuse of discretion standard. *Branch Law Firm L.L.P. v. Osborn*, 532 S.W.3d 1, 12 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). "'An order denying arbitration must be upheld if it is proper on any basis considered by the trial court.'" *Id*. (quoting *In re Weeks Marine, Inc.*, 242 S.W.3d 849, 854 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding [mand. denied])).

A trial court abuses its discretion if it acts arbitrarily or unreasonably or

3

without reference to any guiding rules or principles. *Id.* "Under this standard, we defer to a trial court's factual determinations if they are supported by evidence, but [we] review a trial court's legal determinations de novo." *Id.* (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding)).

ANALYSIS

Asserting that the trial court erred by denying her motion to compel arbitration, Longoria argues that she and CKR Property executed a valid arbitration agreement and that CKR Property's claims fall within the scope of that agreement. CKR Property contends that the arbitration agreement does not apply to its claims because the agreement was executed as part of Longoria's first employment period from June 2015 to June 2016, and applies only to claims arising from that period. Pointing out that its claims arose from the non-compete agreement Longoria signed as part of her second employment period from April 2017 to October 2017, CKR Property asserts that the trial court correctly denied Longoria's motion to compel.

The parties agree that the FAA governs here. "A party seeking to compel arbitration under the FAA must establish that (1) there is a valid arbitration clause; and (2) the claims in dispute fall within that agreement's scope." *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding); *see also Branch Law Firm L.L.P.*, 532 S.W.3d at 12. We analyze these prongs separately.

## I. Validity of the Arbitration Agreement

The existence of a valid arbitration agreement between specific parties generally is a "gateway matter" for the court to decide. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding). Under the FAA, ordinary principles of state contract law determine whether there is a valid arbitration agreement that meets all requisite contract elements. *In re Rubiola*, 334 S.W.3d at

4

224; *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). A mutual agreement to arbitrate provides sufficient consideration to support an arbitration agreement. *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010) (orig. proceeding) (per curiam).

When an arbitration agreement is unambiguous, its construction is governed by the parties' objective intent as expressed in the agreement. *In re Dillard Dept. Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006) (orig. proceeding) (per curiam). Challenges to an arbitration agreement's validity generally focus on contractual issues related to the agreement's enforceability, such as unconscionability, duress, fraudulent inducement, and revocation. *See Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 500 (Tex. 2015) (orig. proceeding) (agreements to arbitrate are valid unless grounds exist in law or in equity for non-enforcement, such as fraud, unconscionability, or voidness under public policy); *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014) (an arbitration agreement may be "invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability" (internal quotation omitted)); *see also Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 237 (5th Cir. 2013) ("the initial question of whether there is a valid agreement to arbitrate usually concerns matters of contract formation").

Here, Longoria asserts that she and CKR Property have a valid and enforceable arbitration agreement. We agree and conclude that the unambiguous terms of the parties' arbitration agreement express an objective intent to arbitrate "any claim or dispute between them." *See In re Dillard Dept. Stores, Inc.*, 186 S.W.3d at 515. The parties' mutual agreement to arbitrate provides sufficient consideration for the agreement's enforcement. *See In re 24R, Inc.*, 324 S.W.3d at 566.

Although only Longoria signed the arbitration agreement, CKR Property's signature was not necessary to bind CKR Property to the agreement. *See In re Polymerica, LLC*, 296 S.W.3d 74, 76 (Tex. 2009) (orig. proceeding) (per curiam) ("we have never held that the employer must sign the arbitration agreement before it may insist on arbitrating a dispute with its employee"); *In re Macy's Tex., Inc.*, 291 S.W.3d 418, 419-20 (Tex. 2009) (orig. proceeding) (per curiam) ("The FAA contains no requirements for the form or specificity of arbitration agreements except that they be in writing; it does not even require that they be signed."). CKR Property does not contend otherwise.

Looking at the substance of its arguments, CKR Property does not challenge the validity of the parties' arbitration agreement and does not assert the agreement is unenforceable under general contract law principles based on unconscionability, duress, fraudulent inducement, or revocation. *See Royston, Rayzor, Vickery, & Williams, LLP*, 467 S.W.3d at 500; *Venture Cotton Coop.*, 435 S.W.3d at 227. Counsel for CKR Property acknowledged at oral argument that the parties' "agreement in and of itself is valid." CKR Property contends that its claims in the underlying proceeding are not among those covered by the arbitration agreement; this contention is properly analyzed as a challenge to the agreement's scope — not to its validity. *See In re Rubiola*, 334 S.W.3d at 223-24 (the issue of whether "the arbitration clause cover[ed] the [plaintiffs'] claims" was one that "question[ed] the clause's scope"); *see also Mendez v. New Bell Gen. Servs., L.P.*, 727 F. Supp. 2d 585, 595 (W.D. Tex. 2010) (when analyzing scope, "the Court must decide whether the claim asserted is the type of claim the parties have agreed to arbitrate").

Even if treated for argument's sake as a threshold validity challenge, CKR Property's arguments would provide no basis for denying Longoria's motion to

compel arbitration because the arbitration agreement's terms specifically refer "all disputes about the validity of this arbitration clause" to arbitration. *See Ernst & Young LLP v. Martin*, 278 S.W.3d 497, 500-01 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding) (where the arbitration clause stated that the parties agreed to arbitrate "any contention that all or part of these procedures are invalid or unenforceable," appellees' challenge to contract's validity was subject to arbitration). While validity usually is a gateway matter for the court to decide, an arbitration agreement may properly refer these issues to arbitration and remove them from the court's consideration. *See In re Weekley Homes, L.P.*, 180 S.W.3d at 130 (the court generally decides whether an arbitration clause is valid unless there is "unmistakable evidence that the parties intended the contrary"); *Ernst & Young LLP*, 278 S.W.3d at 500-01.

Our analysis now turns to the agreement's scope. *See In re Rubiola*, 334 S.W.3d at 225.

## II.      Scope of the Arbitration Agreement

Federal law governs the scope of an arbitration agreement under the FAA. *In re Labatt Food Serv., L.P.*, 279 S.W.3d at 643; *see also Klein*, 710 F.3d at 237 (when "determining the scope of a valid arbitration agreement," the court "appl[ies] federal policy").

"[O]nce the party seeking arbitration proves the existence of an enforceable agreement to arbitrate, Texas and federal law recognize a strong presumption in favor of arbitration" and courts should "resolve any doubts regarding the scope of the arbitration agreement in favor of arbitration." *Branch Law Firm L.L.P.*, 532 S.W.3d at 18 (internal quotation omitted); *see also In re Rubiola*, 334 S.W.3d at 225. "Courts should not deny arbitration unless they can say with positive assurance that an arbitration clause is not susceptible of an interpretation that

would cover the dispute at issue." *Branch Law Firm L.L.P.*, 532 S.W.3d at 18; *see also In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006) (orig. proceeding).

According to its unambiguous terms, the arbitration agreement between Longoria and CKR Property encompasses "any claim or dispute between them . . . whether related to the employment relationship or otherwise." The arbitration agreement contains no temporal or subject matter limitations. Applying the presumption favoring arbitration, we conclude that the parties' arbitration agreement is reasonably susceptible of an interpretation that would encompass the dispute at issue. *See In re D. Wilson Constr. Co.*, 196 S.W.3d at 783; *Branch Law Firm L.L.P.*, 532 S.W.3d at 18.

CKR Property asserts that the parties' arbitration agreement expired at the end of Longoria's first employment period in June 2016; CKR Property further contends that "post-expiration" claims asserted after June 2016 must arise from pre-June 2016 facts and circumstances for either party to invoke the "expired" arbitration agreement. Arguing that "the factual bases for [its] claims only arose from the second employment period" beginning after April 2017, CKR Property contends that Longoria cannot compel arbitration based on an arbitration agreement signed at the beginning of the earlier June 2015-June 2016 employment period.

We are not persuaded by CKR Property's arguments because CKR Property relies primarily on cases involving collective bargaining agreements. *See Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190 (1991); *Williamsbridge Manor Nursing Home v. Local 144 Div. of 1199, Nat'l Health & Human Servs. Emp'rs Union, ALF-CIO*, 107 F. Supp. 2d 222 (S.D.N.Y. 2000). *Litton* held that an arbitration clause in an expired collective bargaining agreement

8

compelled arbitration of post-expiration disputes only if those disputes arose under the expired agreement. 501 U.S. at 205-06. *Williamsbridge Manor* applied *Litton*'s reasoning and concluded that the plaintiff's suit did not arise under an expired collective bargaining agreement as necessary to compel arbitration under the expired agreement's arbitration clause. 107 F. Supp. 2d at 224-25.

These cases are distinguishable. Unlike the stand-alone arbitration agreement at issue here, the arbitration clauses in *Litton* and *Williamsbridge Manor* were part of broader, detailed collective bargaining agreements. *See Litton*, 501 U.S. at 193-94; *Williamsbridge Manor Nursing Home*, 107 F. Supp. 2d at 223-24. Those clauses operated in the context of the comprehensive contracts that encompassed them — a circumstance that does not apply to the freestanding arbitration agreement at issue here.

CKR Property also looks for help from *Mendez v. Puerto Rican International Companies, Inc.*, Nos. 05-CV-00174-LDD, 05-CV-00199-LDD, 2010 WL 2654439 (D.V.I. July 1, 2010), and *Frank v. 84 Components Co.*, No. NA02-14-CH/H, 2002 WL 1364168 (S.D. Ind. June 18, 2002). These cases do not guide our decision.

The *Mendez* plaintiffs signed arbitration agreements with two non-party companies; the plaintiffs later were employed by the defendant companies. 2010 WL 2654439, at *1. The plaintiffs sued the defendant companies and the defendants sought to compel arbitration pursuant to the non-party companies' arbitration agreements with the plaintiffs. *Id*. at *2.

Rejecting the defendant companies' attempt to invoke the arbitration agreements, the court stated that the plaintiffs "reasonably expected their promises to arbitrate to be effective and endure only in regard to the particular employment relationship that generated" the agreements, namely, the plaintiffs' employment

9

relationships with the non-party companies. *Id*. at *4. Noting that the plaintiffs' claims did not arise from "their application or candidacy for employment and their employment with" the non-party companies, the court concluded that the plaintiffs "ha[d] no duty to arbitrate their claims" brought against the defendant companies.

We are not bound by *Mendez* and we decline to follow it. Longoria sought to compel arbitration under an agreement to which she and CKR Property were parties. Unlike the agreement in *Mendez*, the arbitration agreement between Longoria and CKR Property covers **any** dispute between them, whether related to employment or not. Unlike the defendant companies in *Mendez*, Longoria's motion to compel did not depend on an agreement executed with a non-party. *See id*. at *5 ("Plaintiffs' claims do not arise out of the employment transactions in which they signed the [arbitration agreements]: their application or candidacy for employment and their employment with [the non-party companies]."). And, unlike *Mendez*, Longoria does not contend that the agreement at issue is a contract of adhesion. *See id*. at *4.

The plaintiff in *Frank* signed an arbitration agreement before beginning her first period of employment with the defendant. 2002 WL 1364168, at *1 The agreement in *Frank* stated that it applied to all claims "[m]ade or which arise during and following [the plaintiff's] voluntary or involuntary termination of employment." *Id*. The defendant terminated the plaintiff's employment several months later. *Id*. The plaintiff was rehired by the defendant but did not sign a second arbitration agreement. *Id*.

The defendant again terminated the plaintiff and sued her for claims arising from the second termination. The court rejected the defendant's attempt to compel arbitration based on the agreement signed as part of the plaintiff's first employment period, stating that the defendant did "not come forward with any

evidence of words or actions that [the plaintiff] should have interpreted as meaning that she was agreeing to arbitration when [the defendant] hired her for the second time." *Id*. at \*3.

We decline to follow *Frank*'s reasoning. *Frank* demands additional evidence showing the arbitration agreement was intended to apply to the plaintiff's second employment period. *See id*. This approach contravenes the "strong presumption in favor of arbitration" and case law instructing courts to "resolve any doubts regarding the scope of the arbitration agreement in favor of arbitration." *Branch Law Firm L.L.P.*, 532 S.W.3d at 18; *see also In re Rubiola*, 334 S.W.3d at 225. In addition, the arbitration clause in this case is broader than the language used in *Frank*. We rely on the broad, unambiguous language to which the parties agreed viewed in light of the applicable presumption. *See Branch Law Firm L.L.P.*, 532 S.W.3d at 18.

Our analysis is guided instead by *Utility Trailer Sales Southeast Texas, Inc. v. Lozano*, No. 04-16-00644-CV, 2017 WL 3045861 (Tex. App.—San Antonio July 19, 2017, pet. denied) (mem. op.), in which the court analyzed a similar scenario and arbitration agreement.

The plaintiff in *Lozano* signed an arbitration agreement before beginning his first period of employment with the defendant; the plaintiff did not sign a second arbitration agreement before beginning his second employment period. *Id*. at \*1. The agreement stated that it:

> [C]ommences on the Acceptance Date and applies to all Covered Claims which occurred on or after the effective date.
>
> This Agreement shall survive the employer-employee relationship between the Company and the Claimant and shall apply to any Covered Claim whether it arises or is asserted during or after termination of the Claimant's employment with the Company or the

expiration of any benefit plan.

*Id*. at *2. The plaintiff was injured during his second employment period and sued the defendant for negligence. *Id*. at *1. Giving the parties' arbitration agreement its "plain meaning," the San Antonio Court of Appeals concluded that the agreement was applicable to the plaintiff's claims that arose during his second period of employment. *Id*. at *2.

Unlike the agreement analyzed in *Lozano*, the arbitration agreement here does not specifically state that it survives the termination of the employment relationship. But like the *Lozano* agreement, the arbitration agreement in today's case clearly is intended to have a broad reach because it lacks any temporal limitations and applies to any dispute between CKR Property and Longoria "whether related to the employment relationship or otherwise." Giving the agreement its plain meaning, it encompasses CKR Property's claims in the underlying proceeding even though they arose from Longoria's second employment period. *See id*.

We conclude that CKR Property's claims in the underlying proceeding fall within the scope of the parties' arbitration agreement.

## III.     Waiver

In response to Longoria's motion to compel arbitration, CKR Property asserted an express-waiver and an implied-waiver argument. CKR Property asserts that, because Longoria did not address on appeal CKR Property's express waiver argument, the court must affirm the trial court's denial of Longoria's motion to compel.

An express waiver in the arbitration context "arises when a party affirmatively indicates that it wishes to resolve the case in the judicial forum rather

than in arbitration." *Branch Law Firm L.L.P.*, 532 S.W.3d at 22. Implied waiver examines "whether a party has substantially invoked the judicial process" resulting in prejudice to the opposing party. *Id.*

The section addressing waiver in Longoria's opening appellate brief discusses the elements necessary to show an implied waiver, with argument focusing on whether Longoria "substantially invoked" the judicial process. In her opening brief, Longoria broadly asserted that she "did not waive her right to compel arbitration." We conclude that Longoria also sufficiently challenged the trial court's implied finding of express waiver. And, in her reply brief, Longoria provided briefing on the express-waiver issue.

With respect to CKR Property's express waiver contention, the record does not contain any evidence showing that Longoria "affirmatively indicate[d]" she wished to resolve the case in a judicial forum rather than in arbitration. *See id.* The non-compete agreement does not satisfy this showing because it does not state that (1) it is fully integrated; (2) it supersedes all prior agreements; (3) all future claims between CKR Property and Longoria must be resolved in court; or (4) the arbitration agreement is invalid.

With respect to CKR Property's implied waiver argument, Longoria filed her motion to compel arbitration before (1) the trial court entered a docket control order; (2) the parties took any depositions, and (3) the parties exchanged anything other than written discovery requests. These actions do not constitute a substantial invocation of the judicial process. *See id.*; *see also RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 430 (Tex. 2016) (per curiam) ("[p]arties seeking to arbitrate have taken several different types of action without substantially invoking the judicial process" including "filing suit, conducting discovery, noticing depositions, taking depositions, agreeing to trial settings, and moving for procedural disposition").

13

Longoria did not waive her right to compel arbitration pursuant to the parties' arbitration agreement.

## CONCLUSION

We conclude that the parties executed a valid arbitration agreement and that CKR Property's claims in the underlying proceeding fall within the scope of that agreement. Longoria did not waive her arbitration rights. The trial court therefore erred in denying Longoria's motion to compel arbitration. The trial court's January 30, 2018 order is reversed and the cause is remanded to the trial court for proceedings consistent with this opinion.


/s/    William J. Boyce
Justice


Panel consists of Chief Justice Frost and Justices Boyce and Busby (Frost, C.J., concurring).