# NO. 12-20-00180-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MP GULF OF MEXICO, LLC,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 165TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *TOTAL E&P USA, INC.,*<br>*APPELLEE* | *§* | *HARRIS COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

MP Gulf of Mexico, LLC (MP) appeals the denial of its motion to compel arbitration and the granting of Total E&P USA, Inc.'s (Total) motion to stay arbitration. MP presents three issues on appeal. We reverse and render.

## BACKGROUND

MP and Total are parties to a series of oil and gas contracts. In 1996, Total and MP acquired working interests in offshore oil and gas leases in the Gulf of Mexico from the Department of Interior's Minerals Management Service (MMS). The parties later dedicated the group of leases to a drilling unit referred to as the "Chinook Unit." The MMS approved the Chinook Unit effective May 1, 2006. The Chinook Operating Agreement was created to govern the parties' Chinook Unit drilling operations. A similar situation occurred between MP and Devon Energy Production to create the "Cascade Unit."[1]

Originally, the parties contemplated that the Chinook Unit and the Cascade Unit would develop their own production systems. However, the working interest owners later decided that it would be efficient for both units to share a common production system to process, transport,

---

[1] The Cascade Unit and its corresponding agreement are not subject to this appeal.

1

and store the hydrocarbons extracted from both units, creating the "Common System." As a result, the parties executed the Common System Operating Agreement (SOA) and the Cost Sharing Agreement (CSA) in January 2007. The SOA and CSA operate together and govern all aspects of the Common System.

In 2017, MP, as operator of the Chinook Unit, proposed to Total that a well in the Chinook Unit be re-entered. Total, within its rights under the Chinook OA, elected to not participate in the proposed operation. MP proceeded with the proposed work on the Chinook Well No. 6 and in 2019, issued joint interest billing statements to Total, assessing Common System costs of more than $41,000,000. Total took the position that MP should have billed and calculated the amounts owed via the Chinook Operating Agreement instead of the CSA and SOA. As a result, Total refused to pay the invoices.

In September 2019, MP notified Total of a dispute over its failure to pay the invoices and demanded payment. In December, the parties met in an unsuccessful attempt to resolve the dispute. On January 10, 2020, MP initiated the mediation process pursuant to the dispute resolution procedure found in the SOA. Mediation on May 11 was also unsuccessful, and MP filed its demand for arbitration against Total on May 26.

On May 15, Total filed a declaratory judgment action seeking a declaration that the CSA allocates fixed operating expenses and variable operating expenses to the Chinook Unit and that the allocation of such expenses must be done in accordance with the Chinook Operating Agreement. It also filed an arbitration in accordance with the arbitration provision in the Chinook Operating Agreement.[2] On June 5, Total filed a motion to stay the arbitration initiated by MP. On June 29, MP filed a motion to compel arbitration and a response to the motion to stay. Following a hearing, the trial court denied the motion to compel and granted the motion to stay. This appeal followed.[3]

## MOTION TO COMPEL ARBITRATION

---

[2] The Chinook Operating Agreement contains an arbitration provision requiring arbitration proceedings "in accordance with the Center for Public Resources Rules for Non-Administered Arbitration of Business Disputes."

[3] The appeal was originally filed in the 1st District Court of Appeals in Houston but was transferred to this Court by order of the Texas Supreme Court, dated July 30, 2020.

In its first issue, MP argues that the trial court erred in deciding the threshold issue of arbitrability. MP urges that, per the terms of the arbitration agreement, the arbitrator should determine which issues are covered under the arbitration clause.

**Standard of Review and Applicable law**

We review the denial of a motion to compel arbitration for abuse of discretion. *See Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 38 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). When an appeal from such an order turns on a legal determination, we apply a de novo standard. *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 55 & n.9 (Tex. 2008).

The law often applies a presumption favoring arbitration; however, on questions of delegation, this presumption is reversed. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995). As a result, a presumption favors adjudication of arbitrability by the courts absent clear and unmistakable evidence of the parties' intent to submit that matter to arbitration. *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018).

A party moving to compel arbitration must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims asserted fall within the scope of that agreement. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding) (addressing movant's burden under the Federal Arbitration Act (FAA)); *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 605 (Tex. 2005) (orig. proceeding) (per curiam). Both Texas and federal law require the enforcement of valid agreements to arbitrate. 9 U.S.C. § 2; TEX. CIV. PRAC. & REM. CODE ANN. § 171.021 (West 2019). If the movant establishes that an arbitration agreement governs the dispute, the burden then shifts to the party opposing arbitration to establish a defense to the arbitration agreement. *In re Provine*, 312 S.W.3d 824, 829 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding). A party may defend against the enforceability of the agreement only on a ground that exists at law or in equity for the revocation of a contract. *See* 9 U.S.C. § 2; TEX. CIV. PRAC. & REM. CODE ANN. § 171.001(b) (West 2019).

Our state supreme court has made clear that there are three distinct ways to challenge the validity of an arbitration clause: (1) challenging the validity of the contract as a whole; (2) challenging the validity of the arbitration provision specifically; and (3) challenging whether an agreement exists at all. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 124 (Tex. 2018); *In re Morgan Stanley & Co.*, 293 S.W.3d 182, 187 (Tex. 2009) (orig. proceeding). The arbitrator

decides the first type of challenge as a matter of law. ***Buckeye Check Cashing, Inc. v. Cardegna***, 546 U.S. 440, 446, 126 S. Ct. 1204, 1209, 163 L. Ed. 2d 1038 (2006); ***RSL Funding***, 569 S.W.3d at 124. The second type of challenge generally must be resolved by the court. ***Rent-A-Ctr., W., Inc. v. Jackson***, 561 U.S. 63, 70, 130 S. Ct. 2772, 2778, 177 L. Ed. 2d 403 (2010); ***Prima Paint Corp. v. Flood & Conklin Mfg. Co.***, 388 U.S. 395, 402-04, 87 S. Ct. 1801, 1805-806, 18 L. Ed. 2d 1270 (1967); ***Longoria v. CKR Prop. Mgmt., LLC***, 577 S.W.3d 263, 267 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). However, as parties have the right to contract as they see fit, they may delegate to the arbitrator questions concerning validity or enforceability of an arbitration agreement, and we enforce such clauses when the delegation is clear and unmistakable. ***Henry Schein, Inc. v. Archer & White Sales, Inc.***, __U.S.__, 139 S. Ct. 524, 527, 202 L. Ed. 2d 480 (2019); ***Rent-A-Ctr.***, 561 U.S. at 69-70, 130 S. Ct. at 2777-78; ***RSL Funding***, 569 S.W.3d at 121; ***Longoria***, 577 S.W.3d at 268; ***Dow Roofing Sys., LLC v. Great Comm'n Baptist Church***, No. 02-16-00395-CV, 2017 WL 3298264, at *6-7 (Tex. App.—Fort Worth Aug. 3, 2017, pet. denied) (mem. op.); ***Firstlight Fed. Credit Union v. Loya***, 478 S.W.3d 157, 164 (Tex. App.—El Paso 2015, no pet.); ***IHS Acquisition No. 171, Inc. v. Beatty-Ortiz***, 387 S.W.3d 799, 807 (Tex. App.—El Paso 2012, no pet.); *see also* ***In re Weekley Homes, L.P.***, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding). The United States Supreme Court has been very clear that arbitrators are competent to decide any legal or factual issues the parties commit to their determination, including threshold issues of arbitrability such as whether an enforceable arbitration agreement exists. *See* ***14 Penn Plaza LLC v. Pyett***, 556 U.S. 247, 268-69, 129 S. Ct. 1456, 1471, 173 L. Ed. 2d 398 (2009); ***RSL Funding***, 569 S.W.3d at 121; *see* ***Rent-A-Ctr.***, 561 U.S. at 69-70, 130 S. Ct. at 2777-78.

## Analysis

MP contends that the underlying dispute falls within the arbitration provision contained in the SOA. Total urges that the dispute arises under the CSA, which does not contain an arbitration provision. Regardless of the dispute over which document controls, MP further urges that the decision as to scope was not for the trial court to decide because the parties agreed to have the arbitrator decide issues of arbitrability. We agree.

The arbitration provision in the SOA states, in pertinent part:

> 16.16 Dispute Resolution Procedure. Any dispute between the Parties concerning this Agreement (other than Claims by a third party under which a Party hereto is claiming indemnity, and such

third party Claim is in litigation) shall be resolved under the mediation and binding arbitration procedures of this Article 16.16. . . . The Disputing Parties shall then attempt in good faith to resolve the dispute by mediation in Houston, Texas, in accordance with the Commercial Rules of the American Arbitration Association ("AAA"), as such procedure may be modified by agreement of the Disputing Parties. . . . If the dispute has not been resolved pursuant to mediation within sixty (60) days after initiating the mediation process, the dispute shall be resolved through binding arbitration, as follows:

16.16.1 Selection of Arbitrators: If any dispute or controversy arises between the Parties out of this Agreement, the alleged breach thereof, or any tort in connection therewith, or out of the refusal to perform the whole or any part thereof, and the Parties are unable to agree with respect to the matter or matters in dispute or controversy, the same shall be submitted to arbitration before a panel of three (3) arbitrators in accordance with the rules of the AAA and the provisions in this Article 16.16. . . .

16.16.2 Arbitration Proceedings: The panel of arbitrators so chosen shall proceed promptly to hear and determine the matter or matters in dispute, after giving the Disputing Parties due notice of hearing and a reasonable opportunity to be heard. The procedure of the arbitration proceedings shall be in accordance with the Commercial Rules of the AAA, as may be modified by the panel of arbitrators. . . .

Accordingly, the SOA incorporates the American Arbitration Association ("AAA") rules. The AAA rules specifically empower the arbitrator to decide issues of arbitrability, including the validity or enforceability of the arbitration agreement. *See* Am. Arbitration Ass'n, Commercial Arbitration Rules & Mediation Procedures, R-7(a) (amended and effective Oct. 1, 2013) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or *validity of the arbitration agreement* or to the arbitrability of any claim or counterclaim.") (emphasis added), *available at* https://adr.org/sites/default/files/CommercialRules_Web.pdf.

Several of our sister courts have held that when a broad arbitration agreement exists between the parties, and that agreement incorporates arbitration rules specifically empowering the arbitrator to decide issues of arbitrability, then the incorporation of those rules constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability to the arbitrator. *See Trafigura Pte. Ltd. v. CNA Metals Ltd.*, 526 S.W.3d 612, 616-18 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Gilbert v. Rain & Hail Ins.*, No. 02-16-00277-CV, 2017 WL 710702, at *4 (Tex. App.—Fort Worth Feb. 23, 2017, pet. denied) (mem. op.); *Schlumberger Tech. Corp. v. Baker Hughes Inc.*, 355 S.W.3d 791, 803 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 229-31 (Tex. App.—Dallas 2010, pet. denied); *Rio Grande Xarin II, Ltd. v. Wolverine Robstown, L.P.*, Nos. 13-10-00115-CV &

5

13-10-00116-CV, 2010 WL 2697145, at *8-9 (Tex. App.—Corpus Christi July 6, 2010, pet. dism'd) (mem. op.); *see also* **Dow Roofing Sys., LLC v. Great Comm'n Baptist Church**, No. 02-16-00395-CV, 2017 WL 3298264, at *6-7 (Tex. App.—Fort Worth Aug. 3, 2017, pet. denied) (mem. op.) (holding that challenge to unconscionability of arbitration provision was delegated to arbitrator); **Firstlight Fed. Credit Union**, 478 S.W.3d at 164. The Fifth Circuit and other federal appellate courts have reached the same conclusion. *See* **Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.**, 687 F.3d 671, 675 (5th Cir. 2012) (stating "We agree with most of our sister circuits that the express adoption of [the AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability," and collecting cases); *see also* **Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.**, 748 F.3d 249, 262-63 (5th Cir. 2014) (concluding "that whether the Plaintiffs' claims are subject to arbitration must be decided in the first instance by the arbitrator, not a court," when the arbitration agreement expressly incorporates the AAA rules).

Nevertheless, Total argues that the arbitration agreement is narrow because it applies to disputes "arising out of" the SOA and does not contain language applying the arbitration clause to disputes that "relate to," are "in connection with," or "concern" the contract. Total argues that a broad clause would "cover any dispute arising between the parties regardless of the subject matter." However, contrary to Total's argument, the arbitration provision at issue here is not limited to only disputes "arising out of" the agreement. The arbitration provision specifically states that it applies to "any dispute or controversy [that] arises between the Parties out of this Agreement, the alleged breach thereof, or any tort in connection therewith, or out of the refusal to perform the whole or any part thereof." Thus, by its plain language, the arbitration provision is much broader than Total claims. *See* **In re Houston Progressive Radiology Assocs., PLLC**, 474 S.W.3d 435, 445-46 (Tex. App.—Houston [1st Dist.] 2015, orig. proceeding); **Greystone Multi-Family Builders, Inc. v. Tes Electric, LP**, No. 01-15-00640-CV, 2016 WL 3362208, at *5 (Tex. App.—Houston [1st Dist.] June 16, 2016, no pet.) ("The clause does not contain any express limitations on its scope, and applies to 'any particular dispute, claim, or question' that Greystone requests to arbitrate.").

We do note that, in some cases, courts recognized the majority rule, but found that it did not apply because other evidence suggested that the parties did not intend to refer all disputes to arbitration. *See, e.g.*, **Lucchese Boot Co. v. Solano**, 473 S.W.3d 404, 412-14 (Tex. App.—El

Paso 2015, no pet.) (incorporation of TAMS rules—which allow arbitrator to determine arbitrability—was not clear and unmistakable evidence that parties intended to have arbitrator decide arbitrability where arbitration agreement was not broad, but rather identified specific claims that were covered and excluded); *BossCorp, Inc. v. Donegal, Inc.*, 370 S.W.3d 68, 76 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (applying Delaware law and noting that, "[w]here an arbitration agreement contains carve-outs and exceptions providing judicial remedies for disputes, something more than mere reference to the AAA Rules for the conduct of the arbitration is needed to show that the parties clearly and unmistakably intended to delegate arbitrability to the arbitrator instead of the court"); *Haddock v. Quinn*, 287 S.W.3d 158, 175 (Tex. App.—Fort Worth 2009, pet. denied) (general reference to AAA rules was not clear and unmistakable evidence that arbitrator should decide arbitrability where agreement was otherwise silent and AAA Rule 7(a) did not exist when arbitration agreement was originally added to partnership agreement); *Burlington Res. Oil & Gas Co. v. San Juan Basin Royalty Tr.*, 249 S.W.3d 34, 41 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (express incorporation of AAA's rules did not constitute clear and unmistakable evidence of parties' delegation of issues of arbitrability to arbitrator where arbitration agreement restricted the arbitrator's reach only to specifically identified "audit disputes" and only for specific amounts); *In re Ford Motor Co.*, 220 S.W.3d 21, 23-24 (Tex. App.—San Antonio 2006, orig. proceeding) (express incorporation of AAA rules did not constitute unmistakable evidence that parties intended for arbitrator to decide whether nonparties were bound by arbitration agreement). No such evidence exists here. As previously stated, the arbitration clause is broad and did not exclude any claims from arbitration. Nor is this an instance wherein MP seeks to compel a nonparty to arbitrate.

We find persuasive the above-cited Texas and federal cases holding that express incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent to delegate issues of arbitrability to the arbitrator. Applying the reasoning of those cases here, we conclude that there is clear and unmistakable evidence that the parties intended for the arbitrator to decide arbitrability based on the parties' express incorporation of the Commercial Rules of the AAA, in combination with a broad arbitration agreement sending to the arbitrator "any dispute or controversy aris[ing] between the Parties out of this Agreement, the alleged breach thereof, or any tort in connection therewith, or out of the refusal to perform the whole or any part thereof." *See Trafigura*, 526 S.W.3d at 618. As such, the trial court erred by determining whether the

dispute between Total and MP falls within the arbitration provision.[4] Accordingly, we sustain MP's first issue.[5]

## MOTION TO STAY ARBITRATION

In its third issue, MP urges the trial court erred in granting Total's motion to stay the AAA arbitration.

Section 171.098 of the Texas Civil Practice and Remedies Code permits the interlocutory appeal of an order staying arbitration. TEX. CIV. PRAC. & REM. CODE ANN. § 171.098 (West 2019). A party moving to stay arbitration must show that there is not an agreement to arbitrate. *See id.* § 171.023 (West 2019). We apply a no-evidence standard of review to orders granting motions to stay arbitration. ***ODL Servs., Inc. v. ConocoPhillips Co.,*** 264 S.W.3d 399, 417 n.7 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

Total does not dispute that the SOA contains an arbitration clause. And Total does not dispute the validity of that arbitration provision. As explained above, the SOA contains a broad arbitration clause incorporating the AAA rules. Total has not shown the absence of an agreement to arbitrate. Accordingly, we hold that the trial court erred in staying the arbitration. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.023. We sustain MP's third issue. Because our resolution of MP's first and third issues require reversal, we do not reach MP's remaining issue.[6] *See* TEX. R. APP. P. 47.1.

## DISPOSITION

Having sustained MP's first and third issues, we ***reverse*** the trial court's orders denying MP's motion to compel arbitration and staying the AAA arbitration and we ***render*** judgment compelling the AAA arbitration and lifting the stay.

---

[4] At oral argument, Total emphasized that the term "the Agreement" also limits the scope of the arbitration clause. It argues that its declaratory judgment action relates to the CSA and the SOA's arbitration clause is limited to disagreements arising under the SOA instead of the CSA. However, Total's argument ignores the reasoning of the arbitration provision and that arbitrability, including which agreement is at issue, has been delegated to the arbitrators. *See **Trafigura**,* 526 S.W.3d at 619.

[5] Total urges that, should we determine the arbitration provision to be broad, that we hold that the CPR arbitration prevail under the Chinook Agreement. However, whether the dispute arises under the Chinook Agreement or the SOA, under this broad arbitration provision, is a determination of arbitrability to be made by the arbitrator.

[6] MP's second issue questions whether the trial court erred by refusing to enforce the arbitration agreement.

**G<span style="font-variant:small-caps">REG</span> N<span style="font-variant:small-caps">EELEY</span>**
Justice

Opinion delivered December 16, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

DECEMBER 16, 2020

NO. 12-20-00180-CV

**MP GULF OF MEXICO, LLC,**
Appellant
V.
**TOTAL E&P USA, INC.,**
Appellee

---

Appeal from the 165th District Court

of Harris County, Texas (Tr.Ct.No. 2020-29728)

---

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was error in the orders as entered by the trial court and that the same should be **reversed** and judgment rendered.

It is therefore ORDERED, ADJUDGED and DECREED that the trial court's orders denying Appellant, **MP GULF OF MEXICO, LLC's**, motion to compel arbitration and staying the AAA arbitration be **reversed** and judgment **rendered** compelling the AAA arbitration and lifting the stay; all costs are assessed against Appellee, **TOTAL E&P USA, INC.,** and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*